**Sally A. SHEA, Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 85–1087.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 13, 1985.

Decided Jan. 8, 1986.

---

William F. Snyder (argued), Robert A. Lesco, Glenn Waggoner, Marshman, Snyder & Corrigan, Cleveland, Ohio, for petitioner-appellant.

Michael L. Paup, Chief, Appellate Section, Glenn L. Archer, Jr., Asst. Atty. Gen., Tax Div., Dept. of Justice, Carleton D. Powell, William P. Wang (argued), Washington, D.C., for respondent-appellee.

Before MARTIN, CONTIE and WELLFORD, Circuit Judges.

CONTIE, Circuit Judge.

Sally Shea appeals from the Tax Court's decision holding her liable for tax deficiencies and additions for the tax years 1976 and 1977. On June 20, 1984 the Tax Court held that petitioner did not qualify as an "innocent spouse" under 26 U.S.C. § 6013(e)(1) for either tax year, and that she was liable for the 1977 tax deficiencies even though she had not personally signed the tax return.

## I.

Sally Shea was married to Kenneth Shea from 1952 until his death on December 22, 1978. For every year preceding 1976 and 1977, and the year following Kenneth Shea's death, Sally Shea had filed joint tax returns. In 1976, both Kenneth and Sally Shea signed the tax return. This return was prepared by their attorney and tax preparer, James Hogle. Kenneth Shea supplied the information to Hogle, and both Kenneth and Sally were present while the tax return documents were prepared.

In 1977, neither party personally signed the tax return. Instead, Kenneth and Sally's names had been signed by James Hogle who testified that he had been authorized to sign the return by one of the parties, although he could not recall when this return was being prepared, and all the information for this return had been supplied by Kenneth. Petitioner testified that she did not see the 1977 tax return until January 1983. No power of attorney was attached to the tax return and Sally Shea denies having given Hogle permission to sign for her, although she had given her husband permission to sign the joint return.

Prior to July 1976, Kenneth Shea had operated his manufacturer's representative business as a sole proprietorship. In 1976, he incorporated this business under the name Shea Sales Company, Inc. (Shea Sales). Checks for Shea Sales' checking account were imprinted with both Kenneth's and Sally's names. Sally Shea was the secretary-treasurer and a shareholder of Shea Sales. She was authorized to write checks on, and make deposits to, this account and did so at Kenneth's direction, although Kenneth was the only person to examine the corporation's financial statements. She also answered the phone and took messages.

During 1976, Shea Sales issued checks drawn to Kenneth Shea, Sally Shea and "cash" in the amount of $22,501.27, and to payees for payment of the Sheas' personal expenses in the total of $23,880.93. In 1977, such amounts equaled $29,509.00 and $34,927.58 respectively. Sally Shea was unable to establish these checks were written for business purposes.

Petitioner also had a personal checking account in her name. During 1976 and 1977, deposits of $94,622.99 and $47,032.62, respectively, were made to her account. Kenneth Shea used her account regularly, signing Sally's name. The bank notified Sally of his use, requested his use cease and Sally made some unsuccessful efforts to have Kenneth discontinue this practice. When bank statements for her account arrived, Kenneth examined them rather than Sally.

Petitioner has a college education. In 1976, her daughter was married, her son graduated from high school, her father had a 75th birthday, an addition to the house was built, and her husband began drinking more heavily. When the 1977 tax return was prepared, petitioner was staying with her mother because her father had suffered from a massive cerebral hemorrhage from which he later died. Kenneth Shea died in 1978 from cirrhosis of the liver brought on by his alcoholism.

The deficiencies claimed by the Commissioner relate to amounts paid by manufacturers which Shea represented as well as the amounts paid from the Shea Sales'

checking account to Kenneth, Shea, and "cash" for personal expenses. The totals were $28,941.70 for 1976 and $5,729.50 for 1977. Additions under § 6653(a)[1] were calculated pursuant to the statute, totaling $1,447.09 for 1976 and $286.48 for 1977. On this appeal, petitioner does not challenge the amount of these deficiencies or additions, but only whether she should be liable to pay them. First, she argues that she qualifies as an "innocent spouse" under 26 U.S.C. § 6013(e)(1) for both years. In the alternative, appellant asserts that she cannot be held liable for the 1977 tax deficiencies because neither she nor her husband signed the return and she never adopted it as her own.

## II.

When a joint return is filed, the parties are jointly and severally liable for the amount of tax due. 26 U.S.C. § 6013(d)(3). One exception to this is the "innocent spouse" provision. 26 U.S.C. § 6013(e)(1). This provision was adopted to prevent hardships which resulted when one spouse did not report income, thereby leaving the "innocent spouse" to pay the deficiencies. *Sanders v. United States*, 509 F.2d 162 (5th Cir.1975). In 1984, subsequent to the Tax Court's decision in this case, the innocent spouse provision was amended.

The provision which was in effect when the Tax Court decided this case reads:

(1) **In general.**—Under regulations prescribed by the Secretary, if—

(A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return,

(B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and

(C) taking into account whether or not the other spouse significantly benefit-

ed directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission,

then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income.

The statute as it was amended reads:

(1) **In general.**—Under regulations prescribed by the Secretary, if—

(A) a joint return has been made under this section for a taxable year,

(B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse,

(C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and

(D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement,

then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement.

The primary changes are: (1) protection extends not only to omissions from gross income but also to erroneous claims of a deduction, credit or basis[2] which exceed $500,[3] rather than just an omission equaling 25% of gross income; and (2) there is no longer an inquiry into whether the innocent spouse benefited from the omission, since the focus is solely on whether imposing the tax would be inequitable under all the facts and circumstances.[4] Both of

---

**1.** Section 6653 imposes a penalty on underpayments resulting from "negligence or intentional disregard of rules or regulations" and is equal to five percent of the underpayment.

**2.** This comes from the definition of "grossly erroneous items" found at § 6013(e)(2) (1984).

**3.** A "substantial understatement" exceeds $500 as defined by § 6013(e)(3) (1984).

**4.** The only other changes in the amendment relate to substituting "substantial understatements" for "omissions" throughout the section.

these changes would seem to expand the coverage of this exception. The petitioner asserts that the amended version applies to this case. Since the Commissioner does not refute this claim, arguing instead that the appellant fails to satisfy either version of the innocent spouse exception, we will primarily focus on the new provision to determine whether the petitioner qualifies for innocent spouse protection.

■ Under the old version of the statute, the petitioner, as taxpayer, carried the burden of proving she satisfies each element of § 6013(e)(1). *Ratana v. Commissioner,* 662 F.2d 220 (4th Cir.1981); *Ballard v. Commissioner,* 740 F.2d 659 (8th Cir.1984). Since the new version continues to be written in the conjunctive, this rule applies and each of the four requirements of § 6013(e)(1) must be met to qualify as an "innocent spouse."

■ The first requirement of § 6013(e)(1) is that the tax return in question must be a joint return. Petitioner does not specially address this element, limiting her discussion to those elements that the Tax Court claims she did not satisfy. For the 1976 tax year, both parties agree that petitioner filed a joint return. However, for the 1977 tax year, petitioner asserts that she is entitled to innocent spouse protection simply because she did not see or sign the return and does not acknowledge the 1977 tax return as her own. This significantly confuses the issue because to qualify for innocent spouse protection the return must be a joint return. Since we conclude in Part III of this opinion that petitioner did not file a joint return in 1977, she therefore cannot qualify for innocent spouse protection for the 1977 tax year for failure to satisfy this requirement.

The second requirement to qualify for innocent spouse protection is that the tax return must contain substantial understatements attributable to grossly erroneous items. This prong is likewise not contested by the parties, and since the Tax Court concluded that petitioner satisfied this requirement of the old provision, we accept that determination.

The petitioner next must establish that she did not know, and had no reason to know, of the substantial understatements. The Tax Court concluded that petitioner had no actual knowledge of the understate-

ment. Factual conclusions are to be accepted unless clearly erroneous. 26 U.S.C. § 7482(a) (1966) and Fed.R.Civ.P. 52(a). *See also Busch v. Commissioner,* 728 F.2d 945, 949 (7th Cir.1984); *Sanders v. United States,* 509 F.2d 162, 166 (5th Cir.1975). Since the Commissioner does not contest this issue and nothing in the record suggests this conclusion is incorrect, we accept this finding as true. Thus, the determination of whether petitioner satisfies this requirement of the test hinges on whether she had "reason to know" of the substantial understatements made by her husband.

■ A Tax Court's decision that an individual had reason to know of omissions or substantial understatements is generally regarded as a factual determination subject to the clearly erroneous standard. *Estate of Gryder v. Commissioner,* 705 F.2d 336 (8th Cir.), *cert. denied,* 464 U.S. 1008, 104 S.Ct. 525, 78 L.Ed.2d 709 (1983); *Ratana v. Commissioner,* 662 F.2d 220, 224 (4th Cir. 1981). In *Sanders v. United States,* 509 F.2d 162 (5th Cir.1975), the court reasoned that if the trial court directly articulated the "reason to know" standard, then the court's determination of whether an individual satisfied that standard is a factual question and the reviewing court's scope of review is limited by the clearly erroneous standard. *Id.* at 166 n. 4.

■ The test adopted by the *Sanders* court is the same test advanced by Restatement (Second) of Agency § 9, comment *d* (1958), which reads as follows:

A person has reason to know of a fact if he had information from which a person of ordinary intelligence which such person may have, or of the superior intelligence which such person may have, would infer that the fact in question exists or that there is such a substantial chance of its existence that, in exercising reasonable care with reference to the matter in question, his action would be predicated upon the assumption of its possible existence.

509 F.2d at 167. By adopting this reasonable person standard, the court rejected a more restrictive interpretation which would have required the taxpayer to prove that there was no possibility of discovering the omissions. *Id.* at 166. The primary ingredients of the "reason to know" tests are (1) the circumstances which face the petition-

er; and (2) whether a reasonable person in the same position would infer that omissions or erroneous deductions had been made.

■ The Tax Court in this case articulated the correct standard: "The standard to be applied in determining whether a taxpayer had reason to know of omissions is whether a *reasonable person under the circumstances of the taxpayer* at the time of signing the return could be expected to know of the omissions." (Emphasis added). Therefore, we will accept the Tax Court's determination unless clearly erroneous.

After considering the following facts, the Tax Court concluded that petitioner had reason to know of the omissions:

In the instant case, petitioner's circumstances included the following: she had relevant financial records available to her; she was aware that Shea was making unauthorized use of her personal checking account, having been notified of the practice by her bank and having discussed the matter with Shea; she knew of her husband's drinking problem and deteriorating condition during the years in issue and had reason to suspect his inability to properly handle financial matters; and she was at least marginally involved in Shea's business and familiar with his expense payment procedures. Under these circumstances, we believe a prudent taxpayer would at least have inquired into her personal financial and tax situation, thereby discovering the omissions. Only minimal effort would have been required by petitioner to open her bank statements and reconcile her checking account, to secure her personal checks in a location not accessible to Shea, to question the purposes for which she was told to issue or receive checks on the account of Shea Sales, or to contact her attorney to request information as to the filing of her annual tax returns. Petitioner made no such efforts, however.

Furthermore, petitioner was an officer of Shea Sales. In that capacity, she was authorized to and did draw checks on the corporate bank account. She also made

bank deposits, answered the telephone, and performed other routine tasks. Participation in a spouse's business affairs has commonly been held to negate an innocent spouse claim. See, e.g., *Quinn v. Commissioner,* 62 T.C. 223 (1974), affd. 524 F.2d 617 (7th Cir.1975); *Sonnenborn v. Commissioner,* 57 T.C. 373 (1971).

Under these circumstances, petitioner's failure to know of omissions on her tax return resulted from her own failure of prudence. We conclude that petitioner had reason to know of the omissions and opportunity to easily discover them.

The petitioner emphasizes, in contrast, that *at the time of signing the return* in 1976, she cannot reasonably be expected to have know of the various deficiencies, and in support she notes that: (1) she was not actively involved in Shea Sales which incorporated that year; (2) she was not aware of the deposits Kenneth had made in her personal account; (3) her husband had a drinking problem; (4) several children lived at home consuming her time; (5) one child married and another graduated high school; (6) an addition was built on the home; and (7) there was a family reunion. Further, petitioner explains that she was not experienced in business, would not have been able to determine whether income was corporate or personal, and she relied on her attorney for compliance with income tax requirements.

■ As can be seen in comparison, the Tax Court and petitioner focused on entirely different facts to analyze whether petitioner had "reason to know" of the understatements. Essentially, petitioner asserts that the Tax Court was clearly erroneous by determining that the factors she refers to do not satisfy her burden of proof. However, being a homemaker and preparing for weddings, graduations and reunions certainly cannot relieve a taxpayer of joint and several tax liability. The petitioner does not make a showing that her husband's financial affairs were unreasonably complex, *see, e.g., Sanders,* 509 F.2d at 166, 169–70,[5] nor does she provide the court

---

5. In *Sanders,* the district court held that the accounting method used by the petitioner's husband was so complex that it took the IRS a long time to discover the deficiencies, and therefore the spouse should not be imputed with that

knowledge. The appellate court disagreed with this rationale because:

It would be anomalous to hold that she had no reason to know of omissions from gross income because she and Charles kept such

with convincing reasons for not reviewing her own bank statements, which is certainly her statutory duty as bank customer. Ohio Rev.Code § 1304.29. Further, as the Tax Court correctly noted, a minimal involvement in a family's financial affairs can satisfy the "reason to know" standard. *Sanders,* 509 F.2d at 167–68.

■ Even were this court to give different weight to the factors raised by both parties, the Tax Court was not clearly erroneous. Under the Restatement test, petitioner had information from which a person of ordinary intelligence may have inferred that substantial understatements had been made.

The last requirement under § 6013(e)(1) requires the petitioner to show that it would be inequitable, under all the facts and circumstances, to hold her liable for these tax deficiencies. However, since we hold that petitioner did not satisfy the "no reason to know" requirement, we need not address this final requirement.

The petitioner therefore does not qualify for innocent spouse protection for either 1976 or 1977.

### · III.

Petitioner next argues that she should be relieved of tax liability for the 1977 tax deficiencies because neither she nor her husband signed the return. Petitioner relies on 26 C.F.R. § 1.6013–1(a)(2), which states in part "[a] joint return of a husband and wife (if not made by an agent of one or both spouses) shall be signed by both spouses." She asserts that a tax attorney and preparer should not be able to bind a party when that party has neither seen, approved, nor authorized the preparer to sign the tax return form for her. Although petitioner admits that the case law recognizes that one spouse may sign for both spouses, she argues that this exception to § 1.6013–1(a)(2) should not be extended.

■ Whether a tax return is a joint return is a question of fact and "is primarily [a question] of intent." *Sharwell v.*

*Commissioner,* 419 F.2d 1057, 1059 (6th Cir.1969). In *Sharwell,* the court noted that the wife's signature was only one of several factors to consider when determining whether a return is joint. In that case, the wife knew the joint returns "were being prepared and took an active role in their preparation," *id.* at 1059, and therefore the court reasoned that she intended to file a joint return.

■ The Tax Court in the instant case looked at three factors to determine intent: (1) whether the petitioner filed a separate return; (2) whether petitioner objected to the joint filing; and (3) whether the petitioner filed joint returns in previous years. While we believe that these are important criteria to consider, we find that they are not dispositive on the issue of tax deficiency liability. Rather, the focus should not be on petitioner's intent to file *any* joint return, but whether she intended to file and be bound by the particular return in question.

In the case at bar, petitioner admittedly delegated much of the tax return responsibility to her husband, and she had authorized him to sign for her. However, he did not sign her name and she was denied the opportunity to review the form before it was signed. Rather, the attorney and tax preparer signed her name without her consent. Although the tax code regulations provide that one spouse may sign for another spouse in the case of injury or disease when oral consent has been given, 26 C.F.R. § 1.6012–1(a)(5), an agent can prepare a tax return for one or both spouses only when a power of attorney has been executed. *Id.* No power of attorney was executed in this case, and the tax preparer lacked petitioner's authorization to sign for her. Petitioner cannot be found to have tacitly consented to adopting this return merely because she did not file a separate return as in *Howell v. Commissioner,* 175 F.2d 240, 241 (6th Cir.1949), because neither spouse signed the return in the instant case. Further, in 1976 the petitioner had at least been present when the forms were being completed, whereas she was not present and totally uninformed when the

incomplete or confusing records that the IRS required complicated methods to deduce the couple's income situation. The Sanders's access to the facts of their own finances was much better than that of the IRS.

However, the court affirmed because the district court had applied the correct standard and, although it would have given different weight to these factors, the district court was not clearly erroneous. 509 F.2d at 170.

1977 tax return was prepared. Petitioner had no independent income of her own which would have required that she file a separate return.

Therefore, we hold that the petitioner did not intend for this particular tax return to be her own, because the only return petitioner intended to file was a joint return signed by her husband, and the failure of either party to sign the return, or to authorize someone to sign it for petitioner, renders it invalid as to the petitioner. Since the Tax Court did not consider these other factors, we find that the Tax Court was clearly erroneous in determining that petitioner intended to file this joint return.

For the reasons set forth above, we AFFIRM the Tax Court with respect to the 1976 tax deficiencies and REVERSE with respect to the 1977 tax deficiencies. This case is accordingly REMANDED for proceedings consistent with this opinion.