**Joyce PURCELL, Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 86–1678.

United States Court of Appeals, Sixth Circuit.

Argued May 21, 1987.

Decided Aug. 18, 1987.

Rehearing and Rehearing En Banc Denied Oct. 5, 1987.

Alan L. Cates (argued), Morgan & Garner, Chattanooga, Tenn., for petitioner-appellant.

Jean Owens, Acting Counsel, I.R.S., Michael L. Paup, Roger M. Olsen, Tax Div., Dept. of Justice, Washington, D.C., Gilbert S. Rothenberg, Teresa E. McLaughlin (argued), for respondent-appellee.

Before KENNEDY, JONES and RYAN, Circuit Judges.

CORNELIA G. KENNEDY, Circuit Judge.

Purcell ("appellant") appeals the decision of the tax court upholding the Commissioner's assessment of an income tax deficiency for the tax years 1977 and 1978. The tax court concluded that section 6013(e) of the Internal Revenue Code, the innocent spouse provision, did not relieve appellant from liability for the tax resulting from allocation of a portion of the proceeds from the sale of appellant's stock in a corporation to a covenant not to compete because appellant had actual knowledge of the covenant. The tax court also concluded that the innocent spouse provision did not relieve appellant from liability for income tax resulting from the disallowance of claimed bad debt and worthless stock deductions because appellant did not establish that these deductions were grossly erroneous, 86 T.C. 228. We affirm.

Appellant and Ira Reese owned the stock in Reese Tires, Inc. W. Bruce Purcell, appellant's husband, who is now deceased, actively managed the company. On April 15, 1977, appellant, her husband, and Ira Reese entered into an agreement to sell the stock in Reese Tires to Universal Tire, Inc. Reese and Mr. Purcell negotiated this sales agreement; appellant did not participate in the negotiations. Nevertheless, appellant did sign the agreement and initialled it in several places where its terms were altered. One such change was in a clause agreeing that appellant, her husband, and Reese would not compete with Universal Tire in the tire business for three years in specified locations. Appellant initialled a portion of the agreement that changed this covenant from five years to three years.

Appellant and her husband were married in 1952 and divorced in 1982. They filed joint federal income tax returns for 1977 and 1978. During these years, appellant and her husband were stockholders and employees of Purcell Enterprises, Inc. Appellant's duties in this corporation were limited to signing checks on the corporate bank account when Mr. Purcell was out of town and typing and clerical work when her services were required. Appellant also made occasional charges on the company's credit card.

During 1977 and 1978, appellant and her husband each owned twenty-five percent of the outstanding stock of International Demolition and Salvage Co., Inc. ("International Demolition"), a corporation formed in

February, 1974. Appellant was the treasurer of this corporation and a director in 1977 and 1978. Her husband and other shareholders made advances to International Demolition in 1976, 1977, and 1978. This money was treated on the corporate books as loans to the corporation. In 1980, Mr. Purcell transferred his stock in International Demolition to a third party for $10.00 pursuant to an agreement providing that this third party would assume the management and debts of the corporation.

A certified public accountant prepared the joint tax return for the years in question. Appellant furnished only information relating to medical expenses, charitable contributions, and other types of personal items to the CPA for use in preparing the returns. The CPA received most of the information used in preparing the returns from the comptroller of Purcell Enterprises, who was also the comptroller of International Demolition. The CPA occasionally requested information from Mr. Purcell if the comptroller could not furnish the information. The CPA testified that at the time he prepared the returns, he believed he had sufficient information to prepare the returns correctly and made no audit of appellant or Mr. Purcell's records. Appellant did not review the returns prior to signing.

On their joint federal income tax returns for 1977 and 1978, appellant and her husband claimed deductions for nonbusiness bad debts from Reese Tires in the respective amounts of $17,500 and $5,298.69. They also claimed deductions for nonbusiness bad debts with respect to International Demolition in the amounts of $144,411.26 for 1977 and $95,185.05 for 1978. The Commissioner, in the notice of deficiency, disallowed these deductions because it was not established that these debts became worthless in the years in which the losses were claimed. Appellant and her husband also reported that they had sustained a long-term capital loss during 1977 in the amount of $26,904.85 because of the worthlessness of their stock in International Demolition. The Commissioner also disal-

lowed this deduction because it was not established that the stock became worthless in 1977. Finally, the Commissioner increased their reported income by $15,300 for 1977 because this amount was the amount of the sale price of the Reese Tires stock attributable to the covenant not to compete.

Appellant filed a petition for redetermination of these deficiencies in the tax court. Although conceding that the adjustments were correct, appellant contended that she should be afforded relief as an innocent spouse under section 6013(e) of the Internal Revenue Code. With respect to the income derived from the covenant not to compete, the tax court held that section 6013(e) did not provide appellant with relief inasmuch as she had knowledge of the provision in the sales agreement. Although the court recognized that she did not participate in the negotiations for the sale of Reese Tires, she owned the stock and was a signatory to the contract. Further, the court emphasized that appellant initialled a change in the years for which the covenant was effective. Although the court noted that appellant did not know the tax consequences of the covenant, it stated that the knowledge contemplated by section 6013(e)(1)(C) is not knowledge of the tax consequences of a transaction but knowledge of the transaction itself. *See, e.g., Quinn v. Commissioner,* 524 F.2d 617, 626 (7th Cir. 1975).

With respect to the worthless stock and bad debt deductions, the court found that appellant did not know that these items were taken as deductions. Nevertheless, the court held that she did not meet her burden of proof that these deductions were "grossly erroneous" as defined in section 6013(e)(2).[1] The court noted that International Demolition was in poor financial condition during the years in question and that the CPA testified that at the time he prepared the returns he believed that all items were accurate. The court further noted that the CPA relied on information supplied

---

1. The court stated that appellant's concession that the Commissioner's adjustment for these deductions was correct was insufficient to estab-

lish that the deductions were "grossly erroneous."

by the comptroller of Purcell Enterprises and International Demolition.

## I.

Section 6013(d)(3) of the Internal Revenue Code provides that when a joint return is filed, the parties are jointly and severally liable for the amount of tax due. One exception to this rule is the innocent spouse provision contained in section 6013(e).[2] This section provides that a spouse is relieved from liability where, on a joint return, there is a substantial understatement [3] of tax attributable to grossly erroneous items, if the other spouse establishes that in signing the return, he or she did not know, and had no reason to know, that there was such substantial understatement, and, taking into account all the circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax attributable to such substantial understatement. This Court has held that the taxpayer has the burden of proof with respect to all requirements of section 6013(e). *Shea v. Commissioner*, 780 F.2d 561, 565 (6th Cir.1986). The statute further provides that any understatement of tax attributable to omitted income is considered grossly erroneous. Understatements of tax attributable to deductions, on the other hand, are "grossly erroneous items" only if the deductions have "no basis in fact or law."

## II.

■ The tax court concluded that appellant was not entitled to relief with respect to the tax resulting from the income from the portion of the sale price of Reese Tires stock allocated to the covenant not to compete because appellant had actual knowledge of the transaction that gave rise to the omission of income. Whether appellant knew of the substantial understatement of tax on the joint return is a question of fact subject to the clearly erroneous standard of review. *Id.* Appellant testified that her husband informed her that they were selling Reese Tires, and she admitted signing the agreement. Appellant initialled her consent to a handwritten change in the covenant reducing its term from five to three years. There was ample basis for the tax court to find that she knew that the

---

**2.** Section 6013(e), as amended by the Deficit Reduction Act of 1984, provides in pertinent part:

**(e) Spouse relieved of liability in certain cases.**

**(1) In general.**

Under regulations prescribed by the Secretary, if—

(A) a joint return has been made under this section for a taxable year,

(B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse,

(C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and

(D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement,

then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement.

**(2) Grossly erroneous items.**

For purposes of this subsection, the term "grossly erroneous items" means, with respect to any spouse—

(A) any item of gross income attributable to such spouse which is omitted from gross income, and

(B) any claim of a deduction, credit, or basis by such spouse in an amount for which there is no basis in fact or law.

*Deficit Reduction Act of 1984*, Pub.L. No. 98–369, § 424(a), 98 Stat. 494, 801–02 (1984) (current version at 26 U.S.C. § 6013(e) (Supp. III 1985)). Section 2 of the Tax Reform Act of 1986, Pub.L. No. 99–514, § 2 (1986), has redesignated the Internal Revenue Code of 1954 as the Internal Revenue Code of 1986. Nevertheless, the years at issue in the present case antedate the Tax Reform Act of 1988.

Section 424(c) of the Deficit Reduction Act renders the amendment to section 6013(e) of the Code applicable to all taxable years to which the Internal Revenue Code of 1954 applied.

**3.** Section 6013(e)(3) defines substantial understatement as a liability in excess of $500. Section 6013(e)(4) further provides that in the case of liability not attributable to an omission of an item of gross income, the understatement of tax must also exceed a specified percentage of the spouse's adjusted gross income for the preadjustment year. In the present case, it is undisputed that the understatement of income for both years was substantial.

noncompetition provision was in the contract. Furthermore, the tax court's conclusion that her awareness of the tax consequences of this transaction was immaterial is correct. As the Seventh Circuit stated: "[t]he knowledge contemplated by [section 6013(e)] is not knowledge of the tax consequences of a transaction but rather knowledge of the transaction itself." *Quinn v. Commissioner*, 524 F.2d 617, 626 (7th Cir. 1975) (citation omitted).[4] Thus, we believe that the court correctly concluded that appellant was not entitled to relief from the deficiency resulting from the income derived from the covenant not to compete.

### III.

Prior to the 1984 amendments, section 6013(e) provided no relief where the understatement of tax was attributable to claimed deductions. With the 1984 amendments, Congress extended the term "grossly erroneous items" to apply to claims of deductions, credits or bases for which there is no basis in law or fact that give rise to a substantial understatement of taxable income. H.Rep. No. 98–432, Pt. 2, 98th Cong., 2d Sess. 1502, *reprinted in* 1984 U.S.Code Cong. & Admin.News 697, 1143. The tax court in the present case concluded that appellant did not qualify for relief under section 6013(e) with respect to the nonbusiness bad debt and worthless stock deductions because this understatement of tax was not attributable to "grossly erroneous items" as so defined because appellant failed to demonstrate that there was no basis in fact or law for the deductions.

Relying on *Shenker v. Commissioner*, 804 F.2d 109 (8th Cir.1986), *cert. denied*, — U.S. ——, 107 S.Ct. 2460, 95 L.Ed.2d 869 (1987), appellant contends that whenever the taxpayer has had no loss, or the loss did not occur in the tax year for which the taxpayer claimed it, the deduction has no basis in fact or law and is therefore grossly erroneous. In *Shenker*, the tax court disallowed a deduction claimed on the taxpayers' 1971 joint tax return for the loss of securities held on Mr. Shenker's account at a brokerage firm that he was unable to recover when this firm went bankrupt in 1972. The tax court found that under section 165 of the Internal Revenue Code, which permits deductions only for losses "sustained during the taxable year," Mr. Shenker was not entitled to claim the deduction in 1971 because he suffered the loss in 1972. The company remained viable until forced into liquidation in 1972, and Mr. Shenker never demanded return of the stock until June, 1972. Nevertheless, the tax court concluded that Mrs. Shenker was not entitled to innocent spouse relief because the loss occurred at some point, the issue was merely one of timing, and therefore the deduction was not grossly erroneous.

The Eighth Circuit reversed, stating:

Section 165(a) permits deductions only for losses "sustained during the taxable year." Therefore, for there to be some "basis in fact or law," § 6013(e)(2), for a deduction under § 165(a), there must be some basis not only for claiming that a loss occurred, but also for claiming that it was sustained during the taxable year in question. In the present case, the findings of the Tax Court discussed above make clear that there was simply no basis upon which Mr. Shenker could claim that the loss of his stock occurred in 1971, rather than some later year. We therefore reverse the decision of the Tax Court on this issue, and remand the case for consideration of whether Mrs. Shenker meets the remaining requirements for relief under § 6013(e).

804 F.2d at 115.

We believe appellant misreads the Eighth Circuit's holding in *Shenker* when she asserts that all she need show is that the loss did not occur in the taxable year in question. Rather, the court first pointed out that section 165 requires that a deduction

---

**4.** Appellant relies incorrectly on this Court's decision in *Shea* in support of her argument that the tax court applied the incorrect legal standard for determining whether she did not know and had no reason to know that there was a substantial understatement of income. Unlike the situation in the present case, the tax court in *Shea* concluded that the taxpayer had no actual knowledge of the understatement. *Shea*, 780 F.2d at 565.

may be taken only if a loss has occurred and also that it was sustained during the tax year in question. It seems then to discuss *some* "basis in law and fact," apparently to contrast "some" to "no" basis as required by section 6013(e)(2). It then concludes that in the case before it there was simply *no* basis for claiming the deductions in 1971, the tax year in question, and the innocent spouse was therefore entitled to relief if she met the remaining requirements of the section. Had there been some basis for claiming the loss was sustained in 1971, we believe the Eighth Circuit would reach the result that we do here and deny relief.

■ The purpose of the innocent spouse rule is to protect one spouse from the overreaching or dishonesty of the other. Where there is an arguable factual or legal basis for claiming the deduction in the tax year for which the return is filed, it is likely that a fully informed spouse would have joined in the return. To adopt the rule advocated by appellant would place the uninformed spouse in a superior position since it would only be necessary to show that the deduction was improperly taken during the return year. Furthermore, appellant's position would result in reading out the requirement in section 6013(e)(2)(B) that there must be no basis in fact or law for the deduction, credit, or basis.

Appellant contends that the debts and stock in the present case were not wholly without value in the years in which the deductions were taken. With respect to the bad debts, appellant contends that Mr. Purcell did have a reasonable prospect of payment in the years in which the deductions were taken.[5] The tax returns for International Demolition for 1978 and 1979 showed an operating profit before applying the net operating loss carryover. Furthermore, International Demolition continued to carry the debts on its books as debts to shareholders. With respect to the worthless stock deduction, appellant contends that the record before the court demonstrated that the stock did not become totally worthless in 1977. Mr. Purcell and other International Demolition stockholders also loaned money to this company in 1976, 1977, and 1978. Furthermore, International Demolition did not fail until several years after the year in which the worthless stock deduction was taken. Pointing to this information, appellant disagrees with the court's conclusion that she made no showing that these deductions had no basis in fact or law. Appellant also points out that the CPA who prepared the returns testified that he did not do any investigation into the information supplied to him; thus, the tax court erred in assuming that the CPA satisfied himself as to the accuracy of the information on the returns.[6]

The statute does not define "no basis in fact or law." The only legislative history with respect to this issue is contained in a House committee report. The report states that a spouse may be entitled to relief where, for example, one spouse claims phony business deductions in order to avoid paying tax and the other spouse has no reason to know that the deductions are phony. H.Rep. No. 98–432, Pt. 2, 98th Cong., 2d Sess. 1502, *reprinted in* 1984 U.S.Code Cong. & Admin.News 697, 1143. In other cases, the tax court has interpreted the term "grossly erroneous items" to mean deductions or credits that are "fraudulent," "frivolous," "phony," or "groundless." *E.g., Douglas v. Commissioner,* 86

---

**5.** Appellant contends that the test for a proper bad debt deduction is similar to the worthless stock deduction—the debt must have had some worth at the beginning of the tax year and no worth at the end of the tax year. Treas.Reg. § 1.166–5(a)(2) (1986).

**6.** Appellant also argues that she met the other criteria for the innocent spouse exception to the joint and several liability rule. Nevertheless, the tax court concluded that she could not qualify for the exception with respect to the bad debt and worthless stock deductions because she had not shown that these deductions were grossly erroneous. Furthermore, the court held that she did not meet the exception with respect to the income derived from the covenant not to compete because she knew of the transaction. Therefore, this Court will not consider whether appellant met the other criteria of the innocent spouse provision.

T.C. 758 (1986); *Sivils v. Commissioner*, 86 T.C. 79 (1986).

■ We believe that the tax court's conclusion that appellant failed to meet her burden of proving that the deductions had no basis in fact or law is correct. The court found that International Demolition was in financial straits during 1977 and 1978. The corporation paid no salaries to officers after 1977, after paying approximately $49,000 in 1976 and $4,400 in 1977. Additionally, the corporation's net operating losses increased from $434,280.59 in 1975 to $964,304.64 in 1978 and the value of its assets (exclusive of liabilities) declined from $1,285,113.40 in 1975 to $268,958.01 in 1978. Corporate assets consisting of buildings, furniture, and equipment were liquidated in 1977 and 1978. Finally, although International Demolition reported operating profits in 1978 and 1979, these profits apparently resulted from recapture of depreciation on the disposition of corporate assets.[7] Thus, there was both an arguable factual and legal basis for claiming them in the tax year in which they were taken.

## IV.

Accordingly, the judgment of the tax court is AFFIRMED.

NATHANIEL R. JONES, Circuit Judge, concurring.

I concur in today's affirmance of the tax court's decision denying appellant relief under the "innocent spouse" provision of the Internal Revenue Code, 26 U.S.C. § 6013(e) (Supp. III 1985). I write separately only to register my disagreement with the court's attempt to distinguish the recent decision in *Shenker v. Commissioner*, 804 F.2d 109 (8th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 2460, 95 L.Ed.2d 869 (1987). With all due respect, it is my view that we should reject outright the Eighth Circuit's

analysis of section 6013(e) as an erroneous interpretation of an admittedly counter-intuitive provision of the Code.

As Judge Kennedy notes, the clause immediately preceding section 6013(e) provides that, when a joint return is filed, both spouses are jointly and severally liable for the amount of tax due on the aggregate income. 26 U.S.C. § 6013(d)(3) (1982). However, if "there is a substantial understatement of tax attributable to *grossly erroneous* items of one spouse," *id.* § 6013(e)(1)(B) (emphasis added), the *innocent spouse* may escape liability for the tax, interest and penalties attributable to such understatement if the remaining requirements of subsection (e)(1) are satisfied. Where the understatement of tax is attributable to a disallowed deduction, the Code provides that it will be deemed "grossly erroneous" if there "is no basis in fact or law" for the claimed deduction. *Id.* § 6013(e)(2)(B).

Again, as Judge Kennedy observes, the tax court has taken the position that for a claimed deduction of one spouse to be "grossly erroneous" under section 6013(e)(1)(B), it must be "fraudulent," "frivolous," "phony," or "groundless." As the tax court recently explained:

> [I]t simply does not follow that because deductions lacking in a factual or legal basis will be disallowed, all deductions which are disallowed lack a factual or legal basis. Petitioner may not rely on the disallowance or her inability to substantiate the deductions alone to prove a lack of basis in fact or law.

*Douglas v. Commissioner*, 86 T.C. 758, 763 (1986). I agree with this reading of the statute.

By contrast, the Eighth Circuit in *Shenker* seemingly rejects this analysis. By looking to section 165(a) and (g), 26 U.S.C. § 165(a), (g) (1982), for the Code's explanation of the deductibility of worthless stock,[1] the *Shenker* court has equated the nonde-

---

7. Appellant points to nothing in the record regarding the invalidity of the deductions attributable to bad debts owed by Reese Tires. Appellant may not rely on the disallowance or her inability to substantiate the deduction alone to prove a lack of basis in fact or law.

1. The concomitant provision for the deductibility of bad nonbusiness debts is found at 26 U.S.C. § 166(d) (1982 & Supp. III 1985).

ductibility of a claimed loss with the conclusion that a deduction taken for that loss has "no basis in fact or law." In other words, according to the Eighth Circuit, a claimed deduction for worthless stock or bad nonbusiness debts that is disallowed under sections 165 or 166 is, necessarily, "grossly erroneous" for purposes of section 6013(e)(1)(B) and (e)(2)(B).

I do not think that the term "grossly erroneous" deduction can or should be defined simply as an "erroneous" deduction. Such a reading would render superfluous not only the adverb "grossly," but the entire concept of "grossly erroneous deduction," since no would-be innocent spouse seeks relief from an approved deduction. In this manner, the *Shenker* interpretation substantially undermines the integrity of the presumption of joint and several liability expressed in section 6013(d)(3), and provides a practical incentive for spouses to remain ignorant of each other's business dealings as well as the various items on their joint tax returns.

I would reject the *Shenker* court's interpretation of the innocent spouse provision and embrace the analysis set forth in the tax court's cases.