**Mary B. MLAY, Plaintiff**

v.

**INTERNAL REVENUE SERVICE, Defendant**

No. C–1–99–530.

United States District Court, S.D. Ohio, Western Division.

March 8, 2001.

Mary B. Mlay, Cincinnati, OH, pro se.

William M. Kostak, Alejandro L. Bertoldo, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant.

### *ORDER*

HERMAN J. WEBER, District Judge.

This matter is before the Court upon the Report and Recommendation of the United States Magistrate Judge filed February 12, 2001 (doc. no. 17) to which neither party has objected and upon plaintiff's Motion to Expedite Case filed October 17, 2000 (doc. no. 16).

Upon a *de novo* review of the record, the Court finds that the Judge has accurately set forth the applicable law and has

properly applied it to the particular facts of this case. Accordingly, in the absence of any objection by the parties, this Court accepts the Report as uncontroverted.

The Report and Recommendation of the United States Magistrate Judge (doc. no. 17) is hereby **ADOPTED AND INCORPORATED BY REFERENCE HEREIN.** Defendant's Motion for Summary Judgment (doc. no. 14) is **DENIED.** Plaintiff's Motion to Expedite Case (doc. no. 16) is **DENIED AS MOOT.** This matter is **SET FOR STATUS/SCHEDULING CONFERENCE ON MONDAY, APRIL 2, 2001 AT 1:30 P.M.** in Room 801, Potter Stewart U.S. Courthouse, 100 E. Fifth Street, Cincinnati, Ohio.

The Clerk of Courts is hereby **ORDERED** to serve a copy of this Order to plaintiff at her last known address by certified mail, return receipt. Plaintiff is hereby advised that failure to appear at the above conference may result in dismissal of this action for failure to prosecute.

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION

HOGAN, United States Magistrate Judge.

This matter is before the Court on defendant Internal Revenue Service's (IRS) summary judgment motion (Doc. 14), pro se plaintiff Mary Mlay's response (Doc. 15), and plaintiff's motion to expedite. (Doc. 16).

### Background

Plaintiff initiated this action with the filing of a pro se complaint on July 12, 1999. (Doc. 1). Plaintiff seeks a refund of a $1,721.00 overpayment from tax year 1997 that was applied by the IRS against her 1994 and 1995 tax liabilities. Plaintiff alleges that she is entitled to relief as an innocent spouse for the tax liability assessed by the IRS for tax years 1994 and

1995. Plaintiff filed an amended complaint on December 15, 1999, reasserting her entitlement to relief as an innocent spouse for 1994 and 1995, and indicating that she was granted partial relief for 1995.

Plaintiff, Mary Mlay, and her husband, Joel Mlay, filed joint federal tax returns for both 1994 and 1995. The 1994 return reported wages of $7,166.82, which is approximately equal to the wages earned by plaintiff for that year. After taking the standard deduction, the Mlays received a tax refund of $250.86. In 1996, the IRS identified income earned by the Mlays which was not reported on their 1994 return. This unreported income included $13,536.00 in taxable wages earned by Joel Mlay, and $25.00 in interest and $81.00 in pension benefits earned by plaintiff. (*See* Doc. 14, Def.'s motion for summary judgment, Ex. C, Notice of Underpayment of Taxes for Tax Year 1994, p. 2). Based on the unreported income, the IRS determined that the Mlays owed $1,436.00 for deficient taxes and interest in the amount of $287.79 for tax year 1994. (Id., Ex. A, p. 2).

Similarly, the Mlays' 1995 return reported wages in the amount of $ 6,991.62, which is approximately equal to the wages earned by plaintiff in that tax year. After taking the standard deduction, the Mlays received a tax refund of $138.65. On September 12, 1997, the IRS again identified unreported income earned by the Mlays, but not reported on their 1995 return. The unreported income from 1995 included unreported taxable wages of $12,692.00 earned by Joel Mlay, and $47.00 in pension and annuities. (Id., Ex. F). Based on this unreported income, the IRS determined that the Mlays owed $1231.00 in taxes and $234.21 in interest.

By letter dated March 16, 1998, plaintiff informed the IRS that she believed she was entitled to innocent spouse relief from

liability for the Mlays' revised 1994 and 1995 taxes. Plaintiff's request for relief under the innocent spouse rule was initially denied by defendant. Plaintiff was informed of the denial by letter dated June 8, 1998, and also advised that her request for an appeal was being honored and her case was being referred to the IRS Appeals Division. (Id., Ex. H). In the meantime, on April 15, 1998, the IRS applied $1497.18 from plaintiff's 1997 tax year overpayment against the Mlays' 1994 tax liability, satisfying that liability in full, and applied the remaining $223.82 of plaintiff's 1997 overpayment to satisfy a portion of the Mlays' liability for underpayment in 1995. By letter dated April 30, 1999, plaintiff was advised that the Appeals Division had granted plaintiff innocent spouse relief for the remaining unpaid portion of the Mlays' 1995 tax liability, but upheld the prior decision denying such relief with respect to the 1994 taxes and the liability already satisfied by plaintiff's 1997 overpayment. (Id., Doc. I).

## Defendant's Summary Judgment Motion Should Be Denied

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56. *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

A party may move for summary judgment on the basis that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law. In response to a summary judgment motion properly supported by evidence, the non-moving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *Sixty Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987); *Harris v. Adams,* 873 F.2d 929, 931 (6th Cir.1989). Conclusory allegations, however, are not sufficient to defeat a properly supported summary judgment motion. *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir. 1990). The non-moving party must designate those portions of the record with enough specificity that the Court can readily identify those facts upon which the non-moving party relies. *Karnes v. Runyon,* 912 F.Supp. 280, 283 (S.D.Ohio 1995)(Spiegel, J.).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505. In so doing, the trial court does not have a duty to search the entire record to establish that there is no material issue of fact. *Karnes,* 912 F.Supp. at 283. *See also Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989); *Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C.Cir.1988). The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a *prima facie* case, summary judgment is warranted. *Street,* 886 F.2d at 1478 (citing *Celotex* and *Anderson* ). "Where the record taken as a whole could

not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Plaintiff asserts that the IRS wrongfully withheld overpayments of $1,721.00 from her 1997 taxes to satisfy the Mlays' 1994 tax liability in full and in partial satisfaction of the Mlays' liability for tax year 1995. Defendant argues that under 26 U.S.C. § 6013(e), which governs plaintiff's claims for innocent spouse relief for 1994, plaintiff is not entitled to such relief because she failed to prove that in signing her tax return she neither knew nor had reason to know that there was a substantial underpayment.[1]

█ Under the Internal revenue Code, the parties to a joint tax return share joint and several liability for the taxes due, regardless of who earns the income. *Estate of Quirk v. Commissioner of Internal Revenue*, 928 F.2d 751, 762 (6th Cir.1991). However, in order to avoid injustice that such a rule might promote in certain situations, in 1971, Congress created the innocent spouse doctrine. This doctrine was originally codified at 26 U.S.C. § 6013(e). *See Shea v. Commissioner of Internal Revenue*, 780 F.2d 561 (6th Cir.1986). The 1998 Internal Revenue Service Restructuring and Reform Act revised the innocent spouse doctrine, which is now codified at 26 U.S.C. § 6015, and the Code provisions of 26 U.S.C. § 6013(e) were stricken. However, by its terms, 26 U.S.C. § 6015 provides that it only applies to tax liabilities arising on or before July 22, 1998, and any tax liability arising before July 22, 1998, but remaining unpaid as of that date. As set forth above, the Mlays' 1994 tax liability arose prior to July 22, 1998, and was satisfied by the IRS's April 15, 1998 decision to withhold plaintiff's 1997 overpayment. Therefore, plaintiff's claim for innocent spouse relief for 1994 is governed by the provisions of former 26 U.S.C. § 6013(e).

█ 26 U.S.C. § 6013(e) provides in part:

(1) In general—Under regulations prescribed by the Secretary, if—(A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such understatement.

Thus, in order for plaintiff to prevail on her claim that she was entitled to innocent spouse relief for 1994, she must demonstrate the following four elements: (1) the tax return in question is a joint return; (2) the return contains substantial understatements attributable to "grossly erroneous items" of the other spouse; (3) the allegedly innocent spouse did not know, and had no reason to know, of the substantial understatements; and (4) it would be inequitable, under all the facts and circum-

---

1. The same rationale that governs plaintiff's claim for innocent spouse relief for the 1994 tax liability, apply with equal force and effect to plaintiff's claim regarding that portion of her 1995 tax year liability that was satisfied when defendant withheld her 1997 tax overpayment.

stances to, to hold him or her liable for the tax deficiencies. *Asbury v. U.S.*, Bankr. No. 96–30051, 1996 WL 693228, at *3 (Bankr.E.D.Tenn. Sept. 23, 1996)(citing *In re Butcher*, 100 B.R. 363, 375 (Bankr. E.D.Tenn.1989)). The burden is on the taxpayer to prove that all requirements of § 6013(e) have been satisfied by a preponderance of the evidence. *Id.* (citing *Friedman v. Commissioner of Internal Revenue*, 53 F.3d 523, 528 (2d Cir.1995)); *Shea*, 780 F.2d at 565. "Nevertheless, because § 6013(e) is remedial in nature, it is to be construed and applied liberally in favor of the person claiming its benefits." *Asbury*, 1996 WL 693228, at *4 (quoting *Friedman*, 53 F.3d at 528–29)(internal quotations omitted).

In the present case, the parties apparently agree that plaintiff satisfies the first and second elements under § 6013(e). Defendant IRS, however, contends that plaintiff has failed to meet her burden of demonstrating that she neither knew nor had reason to know of her husband's substantial understatements on the Mlays' 1994 tax return. Defendant does not raise any arguments with respect to whether plaintiff has satisfied the fourth element. Thus, this Court turns its attention to § 6013(e)(1)(C).

■ The determination of whether a plaintiff knew or had reason to know of omissions or substantial understatements is generally regarded as a factual determination. *Shea*, 780 F.2d at 565. The standard to be applied in determining whether a taxpayer had reason to know of his or her spouse's substantial understatements is "whether a reasonable person under the circumstances of the taxpayer at the time of signing the return could be expected to know of the omissions." *Id.* at 566. The "primary ingredients" of the reason to know test are (1) the circumstances which face the plaintiff, and (2) whether a reasonable person in the same position would

infer that omissions or erroneous deductions had been made. *Id.* at 565–66. Moreover, the term "knowledge" as it is used in § 6013(e)(1)(C) does not refer to whether the plaintiff had knowledge of the tax consequences of the omission or understatement, but rather whether the plaintiff had knowledge of the omission or understatement itself. *Asbury*, 1996 WL 693228, at *4 (citing *Purcell v. Commissioner of Internal Revenue*, 826 F.2d 470, 474 (6th Cir.1987)). Plaintiff, therefore, cannot avail herself of the innocent spouse rule if she knew, or had reason to know, that Joel Mlay omitted his income from the couple's 1994 tax return.

■ There are several factors which courts have considered when determining whether a plaintiff knew or should have known of a substantial omission or understatement, including: (1) the complexity of the culpable spouse's financial affairs; (2) the plaintiff's involvement in the family's financial matters; (3) the plaintiff's level of education; (4) the plaintiff's involvement in the business affairs of the culpable spouse; (5) lavish expenditures or unexplained increases in the family's standard of living; (6) the culpable spouse's candor regarding the family's finances. *Id.* (citing *Resser v. Commissioner of Internal Revenue*, 74 F.3d 1528, 1536 (7th Cir.1996)). Courts should consider the interplay among these factors rather than merely counting the number of factors in the spouse's favor. *Resser*, 74 F.3d at 1536.

■ In the present case, pro se plaintiff Mlay has submitted a handwritten letter in response to defendant's summary judgment motion. The letter states that she was being manipulated by her husband, that her husband deceived her, and that she had no knowledge of taxes, but merely glanced at the 1994 return form that he tendered to her for signature. Plaintiff also states, "I didn't know, nor did

I have reason to know, that there was an understatement." (*See* Doc. 15, p. 2). Similarly, in her letter of appeal to the IRS, plaintiff stated:

> My husband filled out tax forms for these years because I do not know how to do them. All he said was that a refund will be issued and told me to sign and he would mail them. I don't know what to look for or if anything is done right or not but I trusted him because he said he new how to do it. *Now I find out he didn't fill in all income* and that's why money is due. (Emphasis added). He did not report his income and I certainly should not be punished for his deceit with IRS. I pay my taxes and he should have to pay his. He owes the money for *his* income that he did not report. (Emphasis in original). I didn't know there was even a problem with any of this until we separated. . . .

(Doc. 14, Ex. G, pp. 1–2). Given the fact that the Mlays filed a 1040EZ form for their 1994 tax return, it does not appear that the family's finances were overly complex. However, there is little to no evidence on the record as to plaintiff's involvement in the Mlay's financial affairs, or her level of education. Nor is there much evidence as to plaintiff's involvement in Joel Mlay's business affairs, if any, or whether there were "lavish expenditures" or unexplained increases in the family's standard of living during the 1994 tax year. Defendant apparently did not choose to conduct discovery, or if it did, chose not to file any interrogatory or deposition responses with this Court. Thus, the only evidence regarding what plaintiff knew at the time she signed the 1994 tax return is derived from the pro se plaintiff's appeal letter to the IRS and plaintiff's handwritten response to the present motion. (*See* Doc. 14, Ex. G; Doc. 15). Those materials indicate that plaintiff's spouse was deceiving her about family financial matters. Plaintiff's statement in her appeal letter to the IRS that, "Now I find out he didn't fill in all income" further indicates that plaintiff was not aware of income understatements on the 1994 return until after the IRS notified her of the change in amount due for that tax year. Based on such a statement, the inverse would also be true, to wit: plaintiff did not know at the time she signed the return that income had been omitted. Thus, there is no evidence on the record that plaintiff had actual knowledge of the omissions.

As for whether plaintiff "had reason to know" of the understatements, defendant argues that "a reasonable woman in plaintiff's position, with her level of intelligence, would have known that there was a substantial understatement on their 1994 return." (Doc. 14, p. 9). Unfortunately for defendant, there is no evidentiary base from which this Court can draw any conclusions about plaintiff's "level of intelligence." While plaintiff's letters to the Court are neatly written, and set forth an intelligible argument as to the perceived unfairness of her situation, plaintiff is also under the impression that a portion of her 1995 tax liability was abated because she wrote letters to her Senator, rather than understanding that the abatement was based on a change in the law. Neat handwriting counts a great deal in elementary school, but is not a basis from which to judge someone's "level of intelligence." Without an evidentiary basis for defendant's argument, the Court will not assume that plaintiff's level of intelligence is such that she *had* to know about her husband's understatement of income, or that she had a duty to discover such an omission. Similarly, defendant points out that Joel Mlay's income would account for approximately two-thirds of the family income, and thereby suggests that plaintiff must have known of the understatement. Again, there is no evidence on the record

concerning whether plaintiff even knew that her husband had a job, much less that she was relying on his income in the household. On the Mlay's 1994 return, Joel Mlay lists "student" as his occupation. (Doc. 14, Ex. B). By contrast, the income earned by him for that year is primarily from work at Lazarus, Inc. (Id., Ex. C, p. 3). Without any evidence to support its arguments, the Court cannot automatically conclude that Plaintiff knew of or relied upon her husband's wages in 1994. For her part, plaintiff has clearly stated, "I didn't know, nor did I have reason to know, that there was an understatement." (Doc. 15). Granted it is true that minimal involvement in the family's financial affairs can satisfy the "reason to know" standard, *Shea*, 780 F.2d at 567, but absent any evidence of what plaintiff's level of involvement was, (i.e. did she balance the check book or have access to a joint account?; was she aware that her spouse was earning money through a job or did she think he was a full time student without an income?; did she rely on his income in the household?), the Court cannot automatically conclude that she had reason to know of the understatement. In other words, based on the paucity of evidence before this Court, and based on plaintiff's statement that she was being deceived and did not know or have reason to about the understatement when she signed the return, the Court finds that there are questions of fact as to whether plaintiff knew or had reason to know of a substantial understatement on the Mlays' 1994 tax return. Such factual questions preclude the entry of summary judgment in defendant's favor.

## IT IS THEREFORE RECOMMENDED THAT:

Defendant's summary judgment motion be DENIED.

February 12, 2001.

Appendix

### NOTICE

Attached hereto is the Report and Recommended decision of the Honorable Timothy S. Hogan, United States Magistrate Judge, which was filed on 2–12–01. Any party may object to the Magistrate's findings, recommendations, and report within (10) days after being served with a copy thereof or further appeal is waived. *See United States v. Walters*, 638 F.2d 947 (6th Cir.1981). Such parties shall file with the Clerk of Court, and serve on all Parties, the Judge, and the Magistrate, a written Motion to Review which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made along with a memorandum of law setting forth the basis for such objection, (such parties shall file with the Clerk a transcript of the specific portions of any evidentiary proceedings to which an objection is made).

In the event a party files a Motion to Review the Magistrate's Findings, Recommendations and Report, all other parties shall respond to said Motion to Review within ten (10) days after being served a copy thereof.