GENE F. BREARTON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brearton v. Commissioner
Docket No. 16952-87.
United States Tax Court
T.C. Memo 1989-126; 1989 Tax Ct. Memo LEXIS 126; 56 T.C.M. (CCH) 1544; T.C.M. (RIA) 89126; March 27, 1989; As amended March 30, 1989 Don P. Brown and Gerald M. Porter, for the petitioner. Carole A. Szczepanik, for the respondent. WHALEN
MEMORANDUM FINDING OF FACTS AND *127 OPINION WHALEN, Judge: Respondent determined a deficiency of $ 2,096.00 in the 1983 Federal income tax of petitioner and his former wife, Louise T. Brearton ("Mrs. Brearton" or "his wife"). The sole issue for decision is whether petitioner qualifies under section 6013(e)[1] as an "innocent spouse" entitled to relief from joint and several liability for certain portions of this deficiency. FINDINGS OF FACT The parties stipulated some of the facts, which are so found. We incorporate the stipulation of facts and associated exhibits herein by this reference. Petitioner resided in Richmond Heights, Ohio at the time he filed his petition with this Court. Petitioner married Mrs. Brearton in 1963. Their marriage produced one child, Gina Louise Brearton, and ended in divorce during the Spring of 1984. During their marriage, the Breartons lived in the greater Cleveland area. Petitioner has taught mathematics and computer science in the public schools *128 of Euclid, Ohio for approximately twenty years. During the same time, Mrs. Brearton worked primarily in a local General Electric factory as a laborer. She sustained a severe job-related injury at General Electric during 1980, and has remained unemployed since that time. As a result of her injury, Mrs. Brearton became eligible for various benefits, including workmen's compensation, medical benefits, social security disability compensation, long-term disability insurance, and General Electric disability pension benefits. Petitioner assisted his wife in applying for these benefits. In fact, petitioner himself filled out the application form for the General Electric disability pension benefits on her behalf. In 1983, General Electric began to pay disability pension benefits to Mrs. Brearton. These benefits totalled $ 2,927.52 in 1983, and General Electric issued her a Form W-2P, "Statement for Recipients of Annuities, Pensions, Retired Pay, or IRA Payments," reflecting this amount. Petitioner was "aware that Louise Brearton, during 1983, had several kinds of claims pending," one of which was a "pension disability [sic]" with General Electric. Additionally, petitioner "prior *129 to the end of 1983, * * * knew that [his wife] was receiving a disability pension from General Electric." He also endorsed, in both his and Mrs. Brearton's names, a $ 173.05 check which: (1) was payable to Mrs. Brearton; (2) contained the printed caption "General Electric Pension Plans;" (3) was dated December 1, 1983; and (4) was deposited at the Women's Federal Savings Bank of Cleveland, Ohio on December 10, 1983. During 1983, Mrs. Brearton withdrew funds in the amount of $ 2,968.00 from a General Electric Employee Stock Ownership Plan ("ESOP") in which she was a participant. Petitioner concedes that he is not an innocent spouse with respect to a certain $ 132.85 withdrawal distributed to Mrs. Brearton by check dated February 2, 1983. Accompanying the check was a document entitled "General Electric Employee Stock Ownership Plan Distribution and Tax Statement," which described the tax consequences of the distribution. During the year in issue, Mrs. Brearton maintained a money market account and several Certificates of Deposit with Women's Federal Savings Bank. On August 2, 1983, Mrs. Brearton purchased a $ 10,000.00 Certificate of Deposit, Account No. 10-1005691, from Women's *130 Federal Savings Bank. At petitioner's direction, she designated him the payable-on-death beneficiary of that account. Women's Federal Savings Bank issued Mrs. Brearton a substitute Form 1099 for 1983 entitled "Annual Interest Summary." The form listed a total of $ 2,036.83 earned on the money market account and two other Certificates of Deposit, but did not list any interest attributable to Account No. 10-1005691. That Certificate of Deposit account, however, earned $ 172.17 in interest during 1983. The Breartons realized unreported interest income from two other sources during the year in issue. Mrs. Brearton realized $ 83.00 in interest on an account at National City Bank. Petitioner himself realized $ 83.00 in interest on a Prudential Insurance account. The nature and location of these accounts is not clear from the record. In November of 1983, petitioner's wife entered Ridgecliff Psychiatric Hospital ("Ridgecliff") for treatment of chemical dependency, alcoholism, emotional disorders, and other problems. She remained at Ridgecliff until March of 1984, when she returned to the marital home she shared with petitioner. Prior to 1983, she had from time to time been hospitalized *131 at various institutions, including Ridgecliff, for treatment of similar problems. During the year in issue, Mrs. Brearton also underwent other intermittent periods of hospitalization. Although the Breartons, with the exception of the above periods of hospitalization, continued to live together in their marital home until the Spring of 1984, their marital relationship had deteriorated. Discord, animosity and mistrust characterized their marriage during the year in issue. This marital strife appears to have arisen from petitioner's domineering and abusive treatment of his wife. Petitioner dominated his wife both personally and financially. Throughout their marriage, he functioned as the household's financial decision-maker and controlled Mrs. Brearton's financial arrangements. When Mrs. Brearton was still able-bodied and employed, she routinely turned over her paycheck to petitioner, who paid their bills and gave her grocery money. During 1983, the Breartons maintained a joint checking account at the Euclid School Employees Credit Union, from which petitioner paid all of the family's bills. Although Mrs. Brearton was the nominal owner of several bank accounts, including an *132 account at National City Bank, a money market account at Women's Federal Savings Bank, and three Certificates of Deposit at Women's Federal Savings Bank, petitioner orchestrated the financial activity conducted in her name. During his wife's confinement at Ridgecliff, petitioner frequently drove her to various banks for the purpose of making deposits to her accounts. On other occasions, petitioner went to those banks alone and made deposits to Mrs. Brearton's accounts on her behalf. Approximately $ 24,678.06 was deposited into Mrs. Brearton's money market account at Women's Federal Savings Bank during the year in issue. Moreover, because of her medical and emotional problems, Mrs. Brearton lacked the capacity to handle her own financial affairs during at least some parts of 1983. This left petitioner solely responsible for the conduct of her financial affairs during those periods. Throughout their marriage, the Breartons filed joint Federal income tax returns. Petitioner assumed primary responsibility for the preparation and filing of those returns. Prior to 1970, he prepared the returns himself. Thereafter, he employed a return preparer. Accordingly, the couple filed a *133 joint Federal income tax return for 1983 with Cincinnati Service Center. In the Spring of 1984, petitioner asked Mrs. Brearton for all material, if any, pertaining to their 1983 taxable year which she had in her possession. After receiving this material from her, he compiled their records, transmitted them to their return preparer, reviewed the completed return, obtained his wife's signature, and filed the return. Respondent subsequently determined that petitioner and his wife failed to report income from four sources on their 1983 return: General Electric, Women's Federal Savings Bank, Prudential Insurance, and National City Bank. Based on this determination, he issued a joint statutory notice to petitioner and his former wife. Respondent's determination erroneously included certain income, shown on the schedule below, which the Breartons had actually reported on their return. Additionally, the parties stipulated that petitioner is not an innocent spouse with respect to certain portions of the omitted income, shown on the schedule below in column three. The items of income remaining at issue are shown in the last column of the following schedule: Total
Amount
"Omitted"
Reported
Amount Not
Amount
Source
Income
on Return
at Issue
at Issue
General Electric Pension
$ 2,927.52
--  --  $ 2,927.52
General Electric ESOP
2,968.00
$    89.87
$ 132.85
2,745.28
Womens Federal Savings Bank
2,209.00
2,036.83
--  172.17
Prudential Insurance
83.00
63.64
19.36
--   National City Bank
83.00
54.53
28.47
--   *134 Petitioner does not contest Mrs. Brearton's receipt of the income at issue, its total amount, or its inclusion in their taxable income; rather, he claims innocent spouse protection with respect to the deficiency arising from it. OPINION A husband and wife who make a single return jointly of Federal income taxes ("joint return") are each jointly and severally liable for the amount of tax due. Section 6013(d)(3); Davenport v. Commissioner,48 T.C. 921, 926 (1967); Dolan v. Commissioner,44 T.C. 420, 426-427 (1965). Respondent may assess the entire tax liability on a joint return, and/or any deficiency arising from it, against either spouse individually. Davenport v. Commissioner, supra;Dolan v. Commissioner, supra.
An exception to this rule is the "innocent spouse" provision, section 6013(e), under which one spouse is relieved of liability for a substantial understatement of tax on a joint return if four conditions are met: (A) a joint return has been made under this section for a taxable year, (B) on such *135 return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement * * * [Section 6013(e) (1).] [2]
A person seeking to qualify as an innocent spouse bears the burden of proving he satisfies each of these four elements. Adams v. Commissioner,60 T.C. 300, 303 (1973); *136 Sonnenborn v. Commissioner,57 T.C. 373, 381-383 (1971); Rule 142(a). Failure to establish any one of the conditions set forth in section 6013(e)(1) precludes qualification for innocent spouse relief. Purcell v. Commissioner,826 F.2d 470, 473 (6th Cir. 1987), affg. 86 T.C. 228 (1986), cert. denied    U.S.   , 108 S. Ct. 1290 (1988); Shea v. Commissioner,780 F.2d 561, 565 (6th Cir. 1986), affg. in part and revg. T.C. Memo. 1984-310. The parties have stipulated that the Breartons made a joint return for 1983, and respondent has conceded at trial and on brief that the return reflects "a substantial understatement of tax attributable to grossly erroneous items" of Mrs. Brearton. It remains for petitioner to prove his eligibility under the last two of the above four requirements. First, he must show that he did not know or have reason to know of the substantial understatement. Section 6013(e)(1)(C). Second, he must show that it is inequitable to hold him liable for the deficiency attributable to that understatement. Section 6013(e)(1)(D). In view of our decision about the first, *137 we need not reach the second. Section 6013(e)(1)(C) requires petitioner to establish that he had neither actual nor constructive knowledge of the substantial understatement of tax attributable to the omission of Mrs. Brearton's income. In the words of the statute, petitioner must prove not only "that in signing the return he * * * did not know," but also that he "had no reason to know," of the understatement. To determine whether a taxpayer had reason to know of a substantial understatement, we generally examine whether a reasonable person under the circumstances of the taxpayer at the time of the signing of the return could be expected to know of the understatement. Shea v. Commissioner, supra at 566; Sanders v. United States,509 F.2d 162, 167 (5th Cir. 1975); Terzian v. Commissioner,72 T.C. 1164, 1170 (1979); Mysse v. Commissioner,57 T.C. 680, 696-700 (1972). The applicable standard is whether a reasonably prudent person with the knowledge of the facts possessed by the person claiming innocent spouse status should *138 have been alerted to the possibility of a substantial understatement. Bell v. Commissioner,T.C. Memo. 1989-107. This inquiry is a factual question. Shea v. Commissioner, supra at 565; Sanders v. Commissioner, supra. Accordingly, we set forth below the operative facts from which we have concluded that petitioner knew or should have known of each source of unreported income: (a) the General Electric disability pension payments; (b) the General Electric ESOP withdrawals; and (c) the Women's Federal Savings Bank Certificate of Deposit interest. First, however, several general observations are appropriate. General Observations.It is clear that petitioner dominated the couple's financial affairs. Inquiry into a spouse's participation in family business affairs is a crucial factor in determining whether that spouse had reason to know of a substantial understatement. Quinn v. Commissioner,62 T.C. 223 (1974), affd. 524 F.2d 617 (7th Cir. 1975). Often only minimal involvement in family financial matters can taint a *139 taxpayer with reason to know of a substantial understatement. Shea v. Commissioner, supra at 567. Conversely, a taxpayer deserves innocent spouse status when the "non-innocent" spouse has effectively excluded the "innocent" spouse from knowledge of business affairs, family financial matters, and the contents of their tax returns. Terzian v. Commissioner, supra at 1170-1172; Bell v. Commissioner, supra.Ironically, in the case before us, petitioner controlled the family financial and tax affairs, yet claims relief from liability for omitted income attributed to Mrs. Brearton, who relied exclusively on him to manage her financial affairs. In view of Mrs. Brearton's illness, the need for her reliance on petitioner as financial manager became especially acute during 1983. Petitioner claims that during this time, his wife maintained her own separate financial affairs, of which he had no knowledge, and that he encouraged her to conduct her own banking transactions in order to improve her self-esteem. The record reveals that given her unstable physical and mental condition, Mrs. Brearton was probably incapable of doing so -- a fact *140 not lost on the Court nor, we believe, on petitioner -- and that petitioner orchestrated the financial activity conducted in her name. It was also petitioner who assumed primary responsibility for the preparation and filing of the couple's joint returns throughout their marriage. Until approximately 1970, he prepared the returns himself. Thereafter, he employed a return preparer. In the Spring of 1984, petitioner asked Mrs. Brearton for all materials, if any, pertaining to their 1983 tax year which she had in her possession. Mrs. Brearton complied with his request. Petitioner compiled their records and transmitted them to their return preparer. Petitioner reviewed the completed return, obtained his wife's signature, and filed the return. Petitioner cannot simply close his eyes to the circumstances around him. We believe a prudent taxpayer would have at least inquired into Mrs. Brearton's personal financial circumstances, her tax situation, and the status of her disability claims, thereby discovering the omissions. Petitioner need have exerted only minimal effort to open his wife's banks statements and reconcile her records, to question whether she had begun to receive disability *141 payments, to question the source of her frequent bank deposits, or to contact General Electric about the commencement and amount of benefit payments. Petitioner, however, has not shown that he made such efforts. Nor has he introduced any evidence to show that he did not have reasonable means to discover the understatement, or that he was prevented from ascertaining the complete facts about their joint return, the preparation of which he controlled, and which he signed. Without offering any proof other than his own self-serving testimony, [3] petitioner claims the mistrust and animosity arising from his deteriorating marriage impaired his ability to know about the omitted income. Assuming this to be true for the sake of argument, if petitioner was unwilling to accept the responsibility of prudent inquiry, or if Mrs. Brearton's condition and their marital discord frustrated his inquiry, he could have filed a separate return. However, when he accepted the benefits of filing a joint return, he also accepted the burden of joint and several liability. *142 Petitioner also claims that he had no reason to know of the tax consequences of the omitted income. Ignorance of the tax consequences of a given transaction, however, is not grounds for innocent spouse relief where the spouse claiming relief knows or has reason to know of the facts underlying that transaction. Purcell v. Commissioner,826 F.2d at 474; McCoy v. Commissioner,57 T.C. 732 (1972). General Electric Disability Pension Payments. Mrs. Brearton received $ 2,927.52 in disability pension payments from General Electric in 1983. Although General Electric issued her a Form W-2P, "Statement for Recipients of Annuities, Pensions, Retired Pay or IRA Payments," reflecting this amount, the Breartons reported none of this income on their joint return. We agree with respondent that petitioner should have known of the understatement arising from this omission. Petitioner admitted at the trial that he was "aware that Louise Brearton during 1983 had several kinds of claims pending," one of which was a "pension disability [sic]" with General Electric. *143 Following Mrs. Brearton's injury in 1980, and prior to 1983, petitioner completed her claim application form for the General Electric benefits. A reasonably prudent taxpayer would have inquired whether General Electric had commenced actual payment of his wife's pending benefits claim in 1983. Petitioner also admitted his actual knowledge of his wife's receipt of disability pension payments from General Electric in 1983. Petitioner responded affirmatively to respondent's inquiry on cross-examination whether "* * * prior to the end of 1983, you [he] knew that Louise was receiving a disability pension from General Electric * * *." If petitioner knew his wife received these payments, he should have known of the consequent understatement of tax on their 1983 joint return. Moreover, petitioner has not shown that he was unaware of the Form W-2P issued to his wife by General Electric. Finally, petitioner endorsed, in both his and Mrs. Brearton's names, a $ 173.05 check which: (1) was payable to Mrs. Brearton; (2) contained the printed caption "General Electric Pension Plans;" (3) was dated December 1, 1983; and (4) was deposited at Women's Federal Savings Bank on December 10, 1983. *144 The endorsement of this check would have placed a reasonably prudent taxpayer on notice to inquire further about the nature, source, and total annual amount of such payments. Under these circumstances, petitioner's failure to know of the substantial understatement on their joint return attributable to the General Electric disability pension payments resulted from his own failure of prudence. In the context of the above general observations, the facts before us, combined with petitioner's lack of proof that he undertook prudent inquiry, convince us he had reason to know of the understatement and opportunity to have easily discovered it. General Electric Employee Stock Ownership Plan Withdrawals. During 1983, Mrs. Brearton participated in, and withdrew $ 2,968.00 from, a General Electric ESOP. We agree with respondent that petitioner knew, or should have known, of this omitted income. Petitioner has stipulated that he is not an innocent spouse with respect to a certain $ 132.85 withdrawal distributed to Mrs. Brearton by check dated February 2, 1983, along with a document entitled "General Electric Employee Stock Ownership Plan Distribution and Tax Statement." Despite this *145 stipulation, at trial petitioner denied his knowledge of any payments from General Electric. His testimony on this matter was evasive, internally conflicting, self-serving, and lacking in credibility. On the other hand, Mrs. Brearton, whom we found to be credible, testified that petitioner knew of her withdrawal of funds from the General Electric ESOP. Furthermore, petitioner actually reported $ 89.87 of this income on his joint return, indicating an awareness of at least some portion of the withdrawals. Additionally, as discussed in our general observations, petitioner's control and dominance of the couple's financial affairs, and his wife's deteriorating physical and mental state, placed petitioner on notice of facts that should have caused him to inquire at General Electric regarding the source and amount of any payments his wife may have received from that company. Such inquiry would have revealed the General Electric ESOP withdrawals. Accordingly, we find that petitioner knew or should have known of the understatement arising from omission of the General Electric ESOP income. Women's Federal Savings Bank Certificate of Deposit Interest. On August 2, 1983, Mrs. *146 Brearton purchased a $ 10,000.00 Certificate of Deposit, Account No. 10-1005691, from Women's Federal Savings Bank, and designated petitioner as its payable-on-death beneficiary. Women's Federal Savings Bank issued Mrs. Brearton a Substitute Form 1099 for 1983, entitled "Annual Interest Summary." The form listed a total of $ 2,036.83 interest earned on a money market account and two other Certificates of Deposit, but did not list Account No. 10-1005691 or any interest attributable to that account. Petitioner's 1983 joint return reported interest income of $ 2,036.83. We agree with respondent that petitioner had reason to know of $ 172.17 in unreported interest earned on Account No. 10-1005691, but not reflected on the Form 1099 described above. Petitioner has not shown that this Form 1099 was the only such form issued to Mrs. Brearton by Women's Federal Savings Bank, or given to him by his wife. Nor has petitioner shown that the normal periodic account statements issued by Women's Federal Savings Bank did not reflect this interest. When asked whether he was aware of the Certificate of Deposit in question, petitioner gave evasive, internally conflicting, and self-serving testimony. *147 We question its credibility. Petitioner's testimony also conflicted with his wife's testimony that she, at his direction, designated him the account's payable-on-death beneficiary. Considering these facts and the general observations discussed above, we find that petitioner has not met his burden of proving that he did not know, or have reason to know, of the substantial understatement arising from omission of the interest income. Based on our examination of the three items of omitted income, and petitioner's failure of proof, we conclude that petitioner either knew of, or had reason to know of, the substantial understatement of tax attributable to the omission of those items from the Breartons' 1983 joint return. Accordingly, we hold that petitioner does not qualify as an innocent spouse under section 6013(e) with respect to the income at issue, and is not relieved of the tax liability arising from its omission from the couple's 1983 joint return. Decision will be entered under Rule 155.
Footnotes
1. Unless specified otherwise, all section references are to the Internal Revenue Code of 1954, as amended and in effect at the relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Subsequent to petitioner's 1983 tax year, the Deficit Reduction Act of 1984 ("DEFRA") amended section 6013(e)↩. Sec. 424, DEFRA, 98 Stat. 801. This amendment applied retroactively to all taxable years to which the Internal Revenue Codes of 1954 and 1939 apply, except those closed by statutes of limitation or res judicata. Sec. 424(c), DEFRA, 98 Stat. 803. Because petitioner's 1983 tax year was not then closed by either means, the amended statute, as set forth above, applies to petitioner.
3. This Court is not required to accept unquestionly the self-serving testimony of petitioner. See Geiger v. Commissioner,440 F.2d 688, 689-690 (9th Cir. 1971), affg. per curiam a Memorandum Opinion of this Court, cert. denied 404 U.S. 851 (1971); Sharwell v. Commissioner,419 F.2d 1057, 1060 (6th Cir. 1969), affg. on this issue a Memorandum Opinion of this Court; Tokarski v. Commissioner,87 T.C. 74, 77 (1986); Kean v. Commissioner,51 T.C. 337 (1968), affd. in part, revd. in part on other grounds 469 F.2d 1183↩ (9th Cir. 1972). We observed petitioner's demeanor and performance on the stand when testifying, and considered the plausibility of his testimony in conjunction with the documentary evidence and the testimony of Mrs. Brearton. For the most part, we found him equivocal, ambivalent, evasive, and unconvincing. He was not a credible witness. Consequently, we do not regard his testimony on this and other matters to be reliable or trustworthy evidence.