MARGARET M. TAFOLLA, a.k.a. MARGARET M. DONNALLEY, a.k.a. MARGARET M. NEECE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tafolla v. Commissioner
Docket No. 3790-90
United States Tax Court
T.C. Memo 1991-576; 1991 Tax Ct. Memo LEXIS 624; 62 T.C.M. (CCH) 1301; T.C.M. (RIA) 91576; November 26, 1991, Filed *624 Decision will be entered under Rule 155. Alan M. Agee, for the petitioner. Robert A. Varra, for the respondent. SCOTT, Judge. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in petitioner's income tax and additions to tax for the calendar years 1984, 1985, and 1986 as follows: Additions to Tax
Sec.
Sec. Sec.
Year
Deficiency
6651(a)(1) [1]
6653(a)(1)
6653(a)(1)(A)
1984
$ 13,485
$ 3,364
$ 726
-0-
1985
16,894
4,224
845
-0-
1986
6,953
-0-  -0-
$ 348
Additions to Tax
Sec.
Sec. Sec.
Year
6653(a)(2)
6653(a)(1)(B)
6661(a)
1984
*
-0-
$ 3,342
1985
*
-0-
4,224
1986
-0-
*
1,738
The *625 primary issue in this case is whether petitioner qualifies for relief from liability as an innocent spouse under section 6013(e). The other issues are: (1) If petitioner does not qualify for relief as an innocent spouse with respect to a horse-training activity, whether that activity was engaged in for profit during 1984 and 1985; (2) whether petitioner has unreported income from a dog-grooming business for the years 1985 and 1986 and the amount allowable as business expense deductions with respect to this activity; (3) whether petitioner is liable for additions to tax pursuant to section 6651(a)(1) for each of the years 1984 and 1985 for failure to timely file income tax returns; (4) whether petitioner is liable for additions to tax under section 6653(a)(1) and (2) in each of the years 1984 and 1985 and section 6653(a)(1)(A) and (B) in 1986 for negligence or intentional disregard of rules and regulations; and (5) whether petitioner is liable for additions to tax pursuant to section 6661(a) for each of the years 1984, 1985, and 1986 for substantial understatement of income tax. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner, Margaret *626 M. Tafolla, who resided in Colorado Springs, Colorado, at the time of the filing of her petition in this case, was married to Gary Neece (Mr. Neece) from 1979 to 1987. Petitioner filed a joint Federal income tax return with Mr. Neece for each of the years 1984, 1985, and 1986. Petitioner graduated from high school and attended college for 1 year, majoring in biology and forestry. She has never taken a course in accounting. During 1984 petitioner and Mr. Neece had a joint checking account, but petitioner did not have a separate checkbook on this account. Petitioner had a savings account in her name only during the years here in issue. Mr. Neece did not have a savings account during these years. In 1985 petitioner opened a separate checking account in her name only and maintained this account through the years here involved. After she opened her checking account, Mr. Neece would deposit checks written to him into her account and would have her write him a check from the account for that same amount. Mr. Neece paid all of the bills for the household and did most of the grocery shopping although, when necessary, petitioner did some grocery shopping. In addition to any income *627 he may have received from employment or investments, Mr. Neece received $ 1,000 per month. The source of this money is not clear from the record. Mr. Neece, petitioner, and their children lived in a home for which they made no rent or mortgage payments. Petitioner's mother and Mr. Neece's mother provided clothing for petitioner's children. Petitioner did not go on any vacations, and she did not buy any new clothes during the time she was married to Mr. Neece. The family ate out about once every 2 months. During 1984, 1985, and 1986, petitioner was aware that Mr. Neece was purchasing large quantities of alcohol. During the years in issue petitioner considered filing a separate Federal income tax return because of the deterioration of her marriage relationship with Mr. Neece. She mentioned to Mr. Neece filing a separate Federal income tax return and he told her that there was no such thing as a separate return. Petitioner was not present when her joint returns with Mr. Neece for the years here in issue were prepared, and Mr. Neece told her that she did not have to look them over. Petitioner did not review the returns for the years here in issue before signing them. The property *628 located at 2602 Summit Drive, which was listed on Schedule E on petitioner's 1984 income tax return and with respect to which deductions of $ 16,524.01 were claimed, was never recorded in the county clerk and recorders office as property belonging to Mr. Neece or petitioner. Petitioner was not familiar with the property and had never been to the property. Respondent disallowed the deductions claimed with respect to the property. Mr. Neece was a real estate broker during the years here in issue. Petitioner was not involved in Mr. Neece's real estate activities and he never discussed these activities with her. She visited his office only a few times during the time she was married to him. On their 1984 tax return, petitioner and Mr. Neece reported receipts and net profit of $ 44,122.75 and $ 18,992.58, respectively, from real estate sales activities. Respondent determined that Mr. Neece received additional unreported income in the amount of $ 5,917 and that Mr. Neece failed to substantiate $ 22,919 of expenses claimed with respect to the real estate sales activities, resulting in an increase in income of $ 28,836. On their 1985 tax return, petitioner and Mr. Neece reported a *629 loss of $ 2,085 from real estate sales activities arrived at by subtracting from reported receipts of $ 20,472.84 expenses of $ 22,558.34. Respondent determined that Mr. Neece received additional unreported income of $ 41,137 and that Mr. Neece failed to substantiate $ 18,752 of expenses claimed with respect to the real estate sales activities, resulting in an increase in income of $ 59,889. On their 1986 tax return, petitioner and Mr. Neece reported a loss of $ 665 from real estate sales activities arrived at by subtracting from reported receipts of $ 1,857.82 expenses of $ 2,522.98. Respondent determined that Mr. Neece received additional unreported income of $ 16,366 and that Mr. Neece failed to substantiate the $ 2,522.98 of expenses claimed with respect to the real estate sales activities, resulting in an increase in income of $ 18,889. On April 10, 1984, petitioner signed an installment sales contract for the purchase of a mare named Bint Serrbid. She did not personally make any payment on the installment contract. Mr. Neece purchased a stallion named Fareday on April 12, 1984, for $ 25,000 in cash and a stallion named Maridian on May 28, 1984, by installment sales contract. *630 The horses purchased were Arabians. Fareday and Maridian were sired by a champion imported Egyptian stallion, which made them more valuable. Petitioner asked Mr. Neece whether they could afford the horses, and he responded that she need not worry about it. Petitioner and Mr. Neece intended to train the horses for show with the idea that after the stallions became champions, the stud service fee would increase. Petitioner did not know how to train horses, but tried to learn by watching others. The primary training was done by the boarding stables. She went to the stables nearly every day, and she cleaned up after the horses, but she rarely rode the horses. In 1984 Bint Serrbid was shown at a local show and placed fourth. Sometime in 1985 the stables sold the horses. On their 1984 tax return, petitioner and Mr. Neece reported no income, and $ 9,911 of expenses from their horse showing and training activities, resulting in a claimed loss of $ 9,911. On their 1985 tax return, petitioner and Mr. Neece reported a $ 7,225 loss from the sale of horses. Respondent determined that, because the activity was not entered into for profit, the losses from this activity claimed in 1984 *631 and 1985 are not deductible. At the end of 1985, petitioner began to learn to groom dogs. She was in training for 3 months, and during some of this time she groomed dogs without pay. Toward the end of her training, she was paid for her work but at a rate less than half the price charged by a trained groomer. In 1986 petitioner operated her dog-grooming business as an independent contractor. Petitioner attended dog shows to improve her skills in dog grooming. Petitioner owned a standard poodle that was entered in a few dog shows and won some prizes. She intended to use her dog as a stud and as a model to demonstrate to others her expertise as a groomer. On their 1985 return, petitioner and Mr. Neece reported no income from petitioner's dog-grooming business. In the notice of deficiency, respondent determined by reference to bank deposits, with adjustments for nontaxable items, that petitioner was engaged in this activity during 1985 and had unreported receipts therefrom in the amount of $ 2,199 and had $ 6 of verified expenses. On their 1986 return, petitioner and Mr. Neece reported income in the amount of $ 308 from petitioner's dog-grooming business and claimed deductible *632 expenses of $ 6,119. Respondent determined by reference to bank deposits with adjustments for nontaxable items that petitioner had unreported receipts of $ 8,726 from the dog-grooming business and disallowed $ 4,569 of the claimed deductions for expenses, resulting in an increase in petitioner's income in the amount of $ 13,295. Petitioner and Mr. Neece filed a request for an extension of time to file their 1984 income tax return to August 15, 1985, which was granted. They filed a second request for an extension of time to file to October 15, 1985, which was also granted. Their 1984 income tax return was filed on February 26, 1986. Petitioner and Mr. Neece filed their 1985 income tax return on March 25, 1987. Petitioner received a Form W-2 from Party Throwers indicating that she received $ 30 of income in 1986, but she and Mr. Neece did not report this income on their income tax return for 1986. OPINION Under section 6013(d)(3), if a husband and wife file a joint tax return for a year, then "the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several." Under section 6013(e), [2] if certain requirements are met for a *633 year, then a spouse may be relieved of all or a portion of the joint liability for that year. *634 In order to qualify for innocent spouse status, petitioner must show that: (1) she filed a joint tax return with her husband for the years in question; (2) on each joint tax return, there is a substantial understatement of tax; (3) the substantial understatement of tax is attributable to grossly erroneous items; (4) the grossly erroneous items are items of the husband; (5) in signing the joint tax return, petitioner did not know, and had no reason to know, of the substantial understatement; and (6) it is inequitable to hold petitioner liable for the deficiency attributable to the substantial understatement. While an item of gross income attributable to the other spouse is by definition grossly erroneous, any claim of deduction, credit, or basis of the other spouse is grossly erroneous only if there is no basis in fact or law for the claimed item. Also in connection with a claim of grossly erroneous deductions, the tax liability for the erroneous items must exceed a certain percentage of petitioner's preadjustment year adjusted gross income. Sec. 6013(e). Petitioner's failure to prove any one of the controverted statutory requirements will prevent her from qualifying for innocent *635 spouse relief. Rule 142(a); Stevens v. Commissioner, 872 F.2d 1499, 1504 (11th Cir. 1989), affg. a Memorandum Opinion of this Court; Purcell v. Commissioner, 826 F.2d 470, 473 (6th Cir. 1987), affg. 86 T.C. 228 (1986); Bokum v. Commissioner, 94 T.C. 126, 138-139 (1990); Sonnenborn v. Commissioner, 57 T.C. 373, 381-383 (1971). The parties agree that the first element has been satisfied in that a joint return was filed by petitioner and her husband for each of the years 1984, 1985, and 1986 and that the second element has been satisfied in that there is a substantial understatement on each of the returns. They also agree that the fourth requirement has been met with respect to the items attributable to the rental and real estate sales activities which they agree are items of Mr. Neece. The parties also agree that the tax liability for items that are claims of deduction exceed the required percentage of petitioner's preadjustment year adjusted gross income. Because of the agreement of the parties with respect to certain required elements of proof, to qualify for innocent spouse relief *636 with respect to the omitted income petitioner must establish that in signing the returns, she did not know and had no reason to know of the substantial understatements, and that, considering all of the facts and circumstances, it would be inequitable to hold her liable for the deficiencies. As to the portion of the understatements attributable to claims of deductions, petitioner must also establish that the items are grossly erroneous. With respect to the horse-showing activity, petitioner also must establish that the grossly erroneous items are items of her husband. For petitioner to establish that she did not know of the substantial understatement, she must show that she did not know or have reason to know of the underlying circumstances which gave rise to the adjustment and not merely that she was unaware of the tax consequences. Sec. 6013(e)(1)(C); Bokum v. Commissioner, supra at 144-146; Purcell v. Commissioner, 86 T.C. 228, 237-238 (1986), affd. 826 F.2d 470, 473-474 (6th Cir. 1987). The standard to be applied in determining whether a spouse has "reason to know" is whether a reasonably prudent person who had the *637 facts known or reasonably available to the spouse at the time of signing the return could be expected to know that the tax liability stated was erroneous or that further investigation was warranted. Stevens v. Commissioner, 872 F.2d 1499, 1505 (11th Cir. 1989), affg. a Memorandum Opinion of this Court. See also Shea v. Commissioner, 780 F.2d 561, 566 (6th Cir. 1986), affg. on this issue and revg. on another issue a Memorandum Opinion of this Court. Petitioner knew that Mr. Neece was a real estate broker and that he worked for Range West Realty. She knew that he had an office outside their home, but she visited that office only a few times during the entire period of her marriage to Mr. Neece. She did not participate in Mr. Neece's real estate business activities. Petitioner and Mr. Neece did not live lavishly, and a fair inference from the record is that petitioner's and Mr. Neece's standard of living did not improve during the years in issue. The joint returns filed by petitioner and Mr. Neece for the years here in issue were prepared by a friend of Mr. Neece. Petitioner did not look over the returns before she signed them. Mr. Neece *638 told her she did not need to look over the returns, so she just signed them without review. The rental property located at 2602 Summit Drive with respect to which deductions were claimed was listed on the tax return for each of the years here in issue, but since petitioner did not participate in the preparation of the tax returns or review them, she was unaware of this fact. Petitioner was aware that Mr. Neece purchased two horses, and she signed an installment sales contract for the purchase of a mare. She was aware that the horses were being trained for show and believed that if they became champion stallions the stud service fee would increase. Petitioner went to the stables nearly every day and attempted to learn how to train the horses. On the basis of this record we conclude that a reasonably prudent person who had available the facts shown on the returns signed by petitioner would have known that the income from Mr. Neece's real estate business was understated. At a minimum, a reasonably prudent person would have known to make a further investigation of the facts. She was aware of the amounts of the household expenses and also knew of the expenses of the horses. She *639 asked how they could afford the horses and was told "not to worry." Petitioner chose to close her eyes to the income received by Mr. Neece. She signed a return that she did not know was correct under penalty of perjury, and on its face, the return would have raised questions in the mind of a reasonably prudent person. In fact she must have had questions in her mind since she asked about filing separate returns. Petitioner was an intelligent and educated woman. We conclude that she reasonably should have known of the errors in the joint returns she filed with Mr. Neece. Ordinarily, a deduction having no basis in fact or in law can be described as frivolous, fraudulent, or phony. Douglas v. Commissioner, 86 T.C. 758, 762-763 (1986); see also Bokum v. Commissioner, 94 T.C. 126, 142 (1990). A deduction is not considered grossly erroneous merely because the taxpayer agrees to or does not contest the adjustment proposed by respondent. Purcell v. Commissioner, 86 T.C. 228, 240 (1986), affd. 826 F.2d 470 (6th Cir. 1987). Petitioner has not shown that the expenses and depreciation attributable to the real *640 estate sales activities have no basis in fact or law. No deduction is generally allowable for an activity which is not engaged in for profit. Sec. 183(a). In order to find that an activity was engaged in for profit under section 183, it must be established that the taxpayer had an "actual and honest objective of making a profit." Dreicer v. Commissioner, 78 T.C. 642, 646 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). Factors to be considered in determining whether an activity is engaged in for profit include: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. Sec. 1.183-2(b), *641 Income Tax Regs.
Petitioner did not know how to train horses, and gained her knowledge simply by watching others train horses. Although she testified that she went to the stables every day, she did not indicate how much time she spent training the horses. Petitioner had no experience in other similar activities, and over the 2 years that petitioner and Mr. Neece owned the horses, they had a net loss from the activity. Petitioner did not keep regular records regarding the expenses, did not know what the amount of a stud fee was, if one had been charged for Fareday, or if he had been advertised. In general, petitioner did not understand the business and financial aspects of the activity enough to establish that she or Mr. Neece had the objective to make a profit from the activity. Accordingly, we find that petitioner has not established that the activity was entered into for profit. Petitioner testified that, in addition to the $ 6 of expenses allowed by respondent, she paid $ 600 in 1985 as rent to Canine Cottage. Petitioner testified that the $ 600 was paid with checks written on her account. She also testified that she purchased new scissors, clippers, and clipper blades *642 in 1985 so that her total expenses in that year, excluding the rent, were approximately $ 260. Accordingly, she argues that she should be allowed to deduct these expenses and the rental expense. She does not contest the amount of income determined by respondent for 1985. We find that petitioner is a credible witness, and accordingly, permit her to deduct the $ 600 of rent paid and the $ 260 of other expenses. Because she neither contests the amount of income shown by respondent nor establishes that the income was not from her dog-grooming business, we also find that she had $ 2,199 of unreported income from that business in 1985. Petitioner testified that $ 1,000 deposited to her account in 1986 was not income from her dog-grooming activity, but an amount deposited by Mr. Neece. She testified that Mr. Neece requested that she deposit checks made out to him in her account and then write him a check for the amount of that deposit. She did not have the canceled checks as they were part of items given to Mr. Neece pursuant to the divorce decree. She recalled generally cashing other checks for Mr. Neece, but could not recall any other transaction in detail. With respect to the *643 remaining $ 3,248 of cash deposits to her account in 1986, she could provide no explanation of the source. We accordingly find that petitioner received unreported income from her dog-grooming business of $ 7,726 in 1986. Petitioner claims that she paid $ 300 per month for 4 months for rent at Canine Cottage in 1986 and this amount should be allowed as a deduction. Respondent allowed $ 525.10 of the rent expense she claimed. Petitioner testified that she paid some of the rent directly with checks and cash she had received from her clients; the money did not first go to her checking account. Consequently, any amounts that were unsubstantiated for purposes of a deduction would also not have been included in income under the bank deposits method. Accordingly, in 1986 any additional amounts allowed as a deduction for rent would also have to be included in income. We therefore sustain respondent's determination of rent. Petitioner testified that she spent $ 29 on business cards, $ 119 for an advertisement in a magazine entitled Poodle Variety, and $ 285 for a dryer in 1986. She testified the dryer had a useful life in excess of 1 year. Petitioner claims that her expenses for supplies *644 should be $ 589, rather than $ 481, as allowed but she could not state what items constituted the additional amount. We conclude that petitioner is entitled to deduct the advertising expense of $ 119 and the business card expense of $ 29 in addition to the deduction for supplies allowed by respondent but not any additional amount for supplies. As to the useful life of the dryer, we find that petitioner is entitled to depreciate it over a 5-year period. Petitioner testified that she traveled 120 miles in 1985 and 1,940 miles in 1986 to attend dog shows and that the expense of these trips should be deductible as an expense of her dog-grooming business. She also testified that she traveled 140 miles seven times during 1986, or 980 miles, to pick up supplies for her dog-grooming business. Section 162(a)(2) allows a deduction for traveling expenses incurred while away from home in pursuit of a trade or business. Deductions for travel away from home are allowed only if the taxpayer meets the strict substantiation requirements of section 274(d). However, for the year 1985 and prior years local transportation expenses are not covered by section 274(d). See Cobb v. Commissioner, 77 T.C. 1096, 1101 (1981); *645 Gestrich v. Commissioner, 74 T.C. 525, 530-531 (1980), affd. without published opinion 681 F.2d 805 (3d Cir. 1982). The reasonable inference from the record is that all of petitioner's trips were 1-day trips. These trips were in connection with petitioner's dog-grooming business. We find petitioner's testimony with respect to her trips in connection with her dog-grooming business to be reasonable and credible. We hold that petitioner is entitled to deduct transportation expenses for 1985 computed on the applicable mileage rate applied to 120 miles. Section 274(d) for taxable years beginning after December 31, 1985, was amended to provide that no deduction shall be allowed with respect to any listed property as defined in section 280F(d)(4) -- unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility or property, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship *646 to the taxpayer of persons entertained, using the facility or property, or receiving the gift. * * *
Listed property as defined in section 280F(d)(4) includes any passenger automobile. The elements to be proved to substantiate claimed automobile expense under section 274(d) as applicable to years beginning after December 31, 1985, include the amount of each separate expenditure with respect to an item of listed property, the amount of each business use based on the appropriate measure (mileage for automobiles), date of use, and business purpose of use. Sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). To substantiate the deduction by means of adequate records, a taxpayer must maintain an account book, diary, log, statement of expense, trip sheets, or similar records, and documentary evidence which, in combination, are sufficient to establish each element of an expenditure or use. Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). In general, to be adequate a record must be written and must be prepared or maintained in such a manner that each recording of an element of *647 an expenditure or use that must be substantiated is made at or near the time of that expenditure or use. Sec. 1.274-5T(c)(2)(ii)(C)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46019 (Nov. 6, 1985). Other than petitioner's testimony there is nothing in this record to establish any of the elements required to be proved for the cost of travel with respect to listed property to be deductible. There is no indication that petitioner prepared any record contemporaneously with her travels showing the date of the travel, the mileage, or business purpose. Petitioner introduced no evidence written or oral corroborating her statements as required by section 1.274-5T(c)(3)(i)(B), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985), to establish the deductibility of automobile expense under section 274(d) as applicable to 1986. Therefore, petitioner has failed to substantiate the claimed automobile expense for the year 1986 and is entitled to no deduction for that expense for 1986. An addition to tax is imposed by section 6651(a)(1) for failing to timely file a return, unless the taxpayer establishes that the failure was due to reasonable cause and *648 not willful neglect. The addition is equal to 5 percent of the tax required to be shown on the return, with an additional 5 percent for each month or fraction of a month that the failure to file the return continues, up to a maximum of 25 percent. The 1984 tax return, which was due to be filed on October 15, 1985, secs. 6072(a), 6081(a), was filed on February 26, 1986. The 1985 tax return was due to be filed on April 15, 1986, sec. 6072(a), but was filed on March 25, 1987. Both petitioner's 1984 and 1985 returns were filed more than 4 months after their due date. Petitioner has not established that the failure to timely file was due to reasonable cause and not willful neglect. Accordingly, the addition to tax pursuant to section 6651(a)(1) is sustained for each year. An addition to tax is imposed by section 6653(a)(1) for 1984 and 1985 and section 6653(a)(1)(A) for 1986 for negligence or intentional disregard of rules or regulations. The amount of this addition is 5 percent of the underpayment if any part of the underpayment is attributable to negligence or intentional disregard of rules or regulations. There is an additional amount, pursuant to section 6653(a)(2), as in *649 effect for the years 1984 and 1985, and section 6653(a)(1)(B), as in effect for the year 1986, equal to 50 percent of the interest due on the portion of the underpayment attributable to negligence. Petitioner has not established that the underpayment or any part of the underpayment was not due to negligence or intentional disregard for rules or regulations. Accordingly, we sustain respondent's determination of additions to tax pursuant to section 6653(a) for all the years in issue. Subject to certain exceptions not here applicable, an addition to tax is imposed by section 6661(a) for a substantial understatement of income tax in an amount equal to 25 percent of the underpayment attributable to the substantial understatement. Sec. 6661(a). An understatement is defined as the tax required to be shown on the return less the tax shown on the return, reduced by any rebates. Sec. 6661(b)(2). An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). We sustain the addition to tax under section 6661(a) for those years in which a recomputation under Rule 155 shows that the understatement exceeds *650 the 10 percent of tax required to be shown on the return or $ 5,000 requirement. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50 percent of the interest due on the portion of the underpayment attributable to negligence.↩
2. Section 6013(e) provides, in part: (1) IN GENERAL. -- Under regulations prescribed by the Secretary, if -- (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement,
then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement. (2) GROSSLY ERRONEOUS ITEMS. -- For purposes of this subsection, the term "grossly erroneous items" means, with respect to any spouse -- (A) any item of gross income attributable to such spouse which is omitted from gross income, and (B) any claim of a deduction, credit, or basis by such spouse in an amount for which there is no basis in fact or law.
(3) SUBSTANTIAL UNDERSTATEMENT. -- For purposes of this subsection, the term "substantial understatement" means any understatement (as defined in section 6661(b)(2)(A)) which exceeds $ 500. (4) UNDERSTATEMENT MUST EXCEED SPECIFIED PERCENTAGE OF SPOUSE'S INCOME. -- (A) ADJUSTED GROSS INCOME OF $ 20,000 OR LESS. -- If the spouse's adjusted gross income for the preadjustment year is $ 20,000 or less, this subsection shall apply only if the liability described in paragraph (1) is greater than 10 percent of such adjusted gross income. (B) ADJUSTED GROSS INCOME OF MORE THAN $ 20,000. -- If the spouse's adjusted gross income for the preadjustment year is more than $ 20,000, subparagraph (A) shall be applied by substituting "25 percent" for "10 percent". (C) PREADJUSTMENT YEAR. -- For purposes of this paragraph, the term "preadjustment year" means the most recent taxable year of the spouse ending before the date the deficiency notice is mailed. (D) COMPUTATION OF SPOUSE'S ADJUSTED GROSS INCOME. -- If the spouse is married to another spouse at the close of the preadjustment year, the spouse's adjusted gross income shall include the income of the new spouse (whether or not they file a joint return). (E) EXCEPTION FOR OMISSIONS FROM GROSS INCOME. -- This paragraph shall not apply to any liability attributable to the omission of an item from gross income.
(5) SPECIAL RULE FOR COMMUNITY PROPERTY INCOME. -- For purposes of this subsection, the determination of the spouse to whom items of gross income (other than gross income from property) are attributable shall be made without regard to community property laws.↩