T.C. Memo. 1996-38

UNITED STATES TAX COURT

ANNA RUTH FRENCH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3265-94.                    Filed February 1, 1996.

<u>Jerold K. Nussbaum</u>, for petitioner.

<u>Helen F. Rogers</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WRIGHT, <u>Judge</u>:  Respondent determined a deficiency in
petitioner's Federal income tax for taxable year 1986 in the
amount of $123,862.  Respondent further determined that
petitioner is liable for an addition to tax in the amount of
$12,386 pursuant to section 6661[1] for a substantial
understatement of income tax.  The issues for decision are:

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect during the year in issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

(1) Whether petitioner qualifies for innocent spouse relief under section 6013(e). We hold that she does not.

(2) Whether petitioner is liable for the addition to tax for a substantial understatement of income tax under section 6661 for the taxable year at issue. We hold that she is.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein. Petitioner resided in Frederica, Delaware, at the time the petition was filed in this case.

For each of the 6 taxable years ending in 1990, petitioner and her husband (Mr. French) filed joint Federal income tax returns. The return for taxable year 1988 was filed in October 1989 and contained a net operating loss (NOL) of $618,987. The NOL was derived from several entrepreneurial undertakings by Mr. French. On November 10, 1989, petitioner signed a Form 1045, Application for Tentative Refund, requesting that $226,855 of the NOL from 1988 be carried back to taxable year 1986. Concurrently, petitioner and Mr. French filed related Forms 1040X with respect to taxable years 1986 and 1988. On or about January 20, 1990, petitioner and Mr. French received a refund check in the approximate amount of $226,000 for taxable year 1986.

Following an audit, respondent disallowed part of the 1988 NOL which was carried back to 1986. Respondent now seeks to recapture the corresponding portion of the refund.

A.  Petitioner and Mr. French

Petitioner graduated from high school in 1958 and was married to George French (Mr. French) in 1959.  Petitioner received no further formal education.  Shortly after graduating from high school, petitioner was employed as a clerk typist. Petitioner left the labor force in approximately 1960, after deciding to raise a family.  In 1974, petitioner obtained employment with B.F.W. Scientific (BFW).  While with BFW, petitioner performed the duties of an accounts receivable clerk. In 1976, petitioner accepted employment with International Office Machines (IOM), where she performed a variety of duties, including those of an accounts receivable clerk.  Petitioner remained employed by IOM until sometime in 1983.  After leaving IOM, petitioner was not employed again until late 1989, when she accepted a job with Ocean Plaza Mall (OPM).  Throughout the course of the 2 years that petitioner was employed by OPM, she performed a variety of managerial functions.

In early 1989, petitioner and Mr. French separated.  In July 1989, after leaving the marital home located in Annapolis, Maryland, petitioner moved into the family condominium located in Ocean City, Maryland.  The Ocean City condominium was jointly owned by petitioner and Mr. French and had been purchased sometime prior to 1987.  In 1990, Mr. French left the marital home in Annapolis, Maryland, and moved to the State of Florida. Petitioner and Mr. French were divorced in 1993.

Petitioner admits that her family maintained a comfortable lifestyle during 1987 and 1988; she estimates that her personal and family living expenses for 1988 equaled $104,515. The majority of these expenses were paid by checks drawn against Mr. French's personal account. Some expenses, however, were paid by petitioner.

On their tax return for 1987, petitioner and Mr. French reported $804,282 in gross rental receipts and $598,457 in salaries and wages. The following year, 1988, petitioner and Mr. French reported $414,715 in gross rental receipts and $79,500 in salaries and wages. The correct amount of gross rental receipts for 1988 is $737,200. It has been stipulated that Mr. French was not aware of the discrepancy between the actual and reported amounts of gross rental receipts for 1988. The couple reported $223 of interest income in 1987 and $18,021 of interest income in 1988.

## B.  Mr. French's Business Activities

During the 5-year period ending with 1989, Mr. French was the sole shareholder in a number of S corporations, including Arundel Housing Components, Inc. (AHC). In furtherance of its corporate objectives, AHC leased several parcels of real estate from Mr. French. Substantially all of the rental payments made by AHC were deposited directly into Mr. French's personal bank account. Mr. French's secretary managed this account, but she

failed to keep complete and accurate records regarding the rental deposits.

Sometime prior to 1989, AHC began experiencing financial distress. In June 1988, AHC's controller quit because of the company's deteriorating financial condition. AHC hired a new controller, but this replacement quit 3 months later for similar reasons. Shortly thereafter, AHC sought the services of an accounting firm to evaluate its corporate records for taxable year 1988. The accounting firm determined that AHC's corporate records were in poor condition and many required reconstruction.

In December 1988, AHC filed a chapter 11 bankruptcy petition. The petition was subsequently converted to a chapter 7 petition. During the pendency of the bankruptcy proceedings, a creditors committee filed suit against AHC alleging improper transfers and fraudulent conveyances. The creditors committee hired Piper & Marbury, a law firm, to represent it in the bankruptcy proceedings. Piper & Marbury hired the accounting firm of Ernst & Young to evaluate AHC's financial records. In January 1989, before the process of reconstructing AHC's financial records for 1988 had been completed, the creditors committee obtained possession of such records. Sometime after October 1989, the creditors committee returned the records to AHC. Upon receipt of the records, AHC discovered that some records were missing. Consequently, neither petitioner nor Mr.

French was in possession of AHC's financial records for taxable year 1988 at the time their 1988 return was prepared.

C.  Refund Check and Certificates of Deposit

In January 1990, petitioner and Mr. French received a refund check in the approximate amount of $226,000 from the Internal Revenue Service (IRS).  The refund was for taxable year 1986 and resulted from the NOL carryback which occurred in 1988. Petitioner and Mr. French also received two refund checks from the State of Maryland, totaling $47,000, in December 1989.  In February 1990, petitioner and Mr. French used the proceeds from the three refund checks to purchase three certificates of deposit.  Two of the three certificates of deposit were in the amount of $100,000 and the third was in the amount of $70,000. Each of these certificates of deposit was issued jointly to petitioner and Mr. French.  Sometime thereafter, a portion of these certificates of deposit was cashed, and petitioner used some of the proceeds for personal and family living expenses. Mr. French also retained some of the proceeds for use in a business venture he was undertaking in Florida.  In December 1990, the remaining portion of the three certificates of deposit purchased in February 1990 was rolled over into two new certificates of deposit, one in the amount of $100,000 and the other in the amount of $50,000.  Both of these certificates of deposit were issued solely in petitioner's name.

In November 1990, petitioner and Mr. French sold their marital home located in Annapolis, Maryland. The net proceeds from this sale amounted to approximately $144,000. These proceeds were used to purchase a certificate of deposit in the approximate amount of $144,000. This certificate of deposit was issued solely in petitioner's name. In early 1991, petitioner cashed the certificate of deposit in order to aid Mr. French with the purchase of a condominium in Pompano Beach, Florida. The Pompano Beach condominium was subsequently sold pursuant to the couple's divorce decree. Petitioner received $100,000 from the sale of the Pompano Beach condominium as a division of her marital rights.

## OPINION

### Issue 1. Innocent Spouse

A husband and wife who file a joint return are jointly and severally liable for the tax due. Sec. 6013(d)(3). An "innocent" spouse, however, is relieved of liability if he or she proves the following: (1) That a joint return has been made for a taxable year; (2) that on such return there is a substantial understatement of tax attributable to grossly erroneous items of the other spouse; (3) that he or she did not know, and had no reason to know, of such substantial understatement when he or she signed the return; and (4) that after consideration of all the facts and circumstances, it would be inequitable to hold him or her liable for the deficiency in income tax attributable to such

substantial understatement.  Sec. 6013(e)(1), as amended by the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 424(a), 98 Stat. 801-802; Purcell v. Commissioner, 86 T.C. 228, 235 (1986), affd. 826 F.2d 470 (6th Cir. 1987).  Petitioner bears the burden of establishing that each of the four requirements of section 6013(e) has been satisfied.  Purcell v. Commissioner, 826 F.2d at 473; Sonnenborn v. Commissioner, 57 T.C. 373, 381-383 (1971).

The requirements of section 6013(e) are conjunctive rather than alternative; a failure to meet any of the requirements prevents a spouse from qualifying for relief under section 6013(e).  Cohen v. Commissioner, T.C. Memo. 1987-537; Estate of Killian v. Commissioner, T.C. Memo. 1987-365; Levin v. Commissioner, T.C. Memo. 1987-67.  The parties agree that petitioner and Mr. French filed a joint return for the taxable year in issue.  The parties also agree, and we find, that there is a substantial understatement of tax attributable to a grossly erroneous item of Mr. French's for the taxable year in issue.  Whether petitioner fulfilled the remaining requirements of section 6013(e), however, is disputed.

### Section 6013(e)(1)(D)--Inequitable

Petitioner must prove that, given the facts and circumstances, it would be inequitable to hold her liable for the deficiency attributable to Mr. French's substantial understatement.  Sec. 6013(e)(1)(D); sec. 1.6013-5(b), Income Tax Regs.  Section 6013(e), as amended, no longer requires us to

determine whether a spouse significantly benefited from the erroneous item; however, this factor is still considered in determining whether it is inequitable to hold a spouse liable. Purcell v. Commissioner, 86 T.C. at 242; Johnson v. Commissioner, T.C. Memo. 1993-227. Normal support is not a "significant benefit" for purposes of determining whether denial of innocent spouse relief would be inequitable under section 6013(e)(1)(D). Terzian v. Commissioner, 72 T.C. 1164, 1172 (1979); sec. 1.6013-5(b), Income Tax Regs. Normal support is measured by the circumstances of the parties. See Sanders v. United States, 509 F.2d 162, 168 (5th Cir. 1975). Petitioner bears the burden of proving that she received no significant benefit from the understatements other than normal support, and this burden must be satisfied with specific facts regarding lifestyle expenditures, asset acquisitions, and dispositions of the benefits of the understatements. Estate of Krock v. Commissioner, 93 T.C. 672 (1989).

Respondent contends that it would not be inequitable to hold petitioner liable for the deficiency attributable to the understatement because petitioner significantly benefited from the omitted income during 1988. Respondent further argues that it would not be inequitable to hold petitioner liable because she received significant benefits from the refund check received.

In contrast, petitioner contends that she experienced no significant benefit with respect to either the omitted income

during 1988 or the refund check received in 1990.  Petitioner maintains that any benefit that she received from either the omitted income or the refund check amounted to nothing more than normal support.  We disagree.  Even assuming that petitioner received nothing more than normal support from the omitted income in 1988, we do not accept petitioner's contention with respect to the refund check.  As explained above, normal support is not a "significant benefit" for purposes of determining whether denial of innocent spouse relief would be inequitable under section 6013(e)(1)(D).  Terzian v. Commissioner, supra at 1172; sec. 1.6013-5(b), Income Tax Regs.  We believe, however, that the refund check provided petitioner with more than normal support in 1990.  Using the funds obtained from the refund check, petitioner and Mr. French jointly purchased several certificates of deposit in large denominations.  A portion of the money represented by these certificates of deposit was used for the direct and individual benefit of petitioner.  The remainder, less some amount used personally by Mr. French, was rolled over into two certificates of deposit owned individually by petitioner. Although the record is not entirely clear as to what petitioner did with these two certificates of deposit, which totaled $150,000, we are not persuaded by petitioner's argument that such funds merely amounted to normal support allotted to her by Mr. French.  In fact, the $150,000 exceeds petitioner's 1988 estimated family expenses by nearly 50 percent.  Moreover, this

$150,000 was in addition to all other support petitioner received during 1990.

Accordingly, we find that it is not inequitable to hold petitioner liable for the deficiency attributable to Mr. French's substantial understatement. We therefore hold that petitioner has not met all the conjunctive requirements of section 6013(e), and she is not entitled to relief as an innocent spouse. As a result of this holding, it is unnecessary for us to consider whether petitioner knew or had reason to know of Mr. French's substantial understatement.

Issue 2. Addition to Tax, Section 6661

Respondent determined that petitioner is liable for the addition to tax pursuant to section 6661 for taxable year 1986 due to a substantial understatement of income tax. Respondent's determination carries the presumption of correctness. Rule 142(a).

The addition to tax is 25 percent of any underpayment attributable to a substantial understatement. Sec. 6661(a); Pallottini v. Commissioner, 90 T.C. 498 (1988). A substantial understatement is one which exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. Sec. 6661(b)(1). Petitioner has not shown that the understatement for taxable year 1986 is subject to reduction pursuant to section 6661(b)(2)(B)(i) or (ii). Accordingly, respondent's determination as to this issue is sustained.

To reflect the foregoing,

Decision will be

entered for respondent.