In re Heidi J. LESNICK, Debtor.

Bankruptcy No. 93–61764.

United States Bankruptcy Court,
N.D. Ohio.

Aug. 9, 1996.

Daniel J. McGown, Akron, OH, Andrew J. Michaels, Wadsworth, OH, for Debtor.

Leslie, Singer, Department of Justice, Tax Division, Washington, DC, for I.R.S.

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Chief Judge.

Before the court is an objection filed by the debtor, Heidi Lesnick (Debtor), to the claim of the Internal Revenue Service (IRS). The IRS filed a response asserting that the entire amount of the claim is due. The court conducted a hearing on the matter and, following the submission of post-hearing memoranda by the parties, took it under advisement.

## FACTS

The Debtor and Jerome Lesnick (Mr. Lesnick) (collectively, Lesnicks) have been married since 1983. From that time until 1993, the Debtor did not work outside the home. She is a high school graduate who has no formal training in either accounting or finance. Prior to her marriage to Mr. Lesnick, the Debtor worked as a bank teller for approximately 10 years.

In 1987, the Lesnicks legally resided in Florida but spent a significant amount of time in Ohio. Mr. Lesnick owns a condominium in Florida, and both the Debtor and Mr. Lesnick own a three bedroom house in Ohio with an appraised value of approximately $120,000.00. Mr. Lesnick also owned a rental property in Ohio and a one-third interest in a ski chalet in New York. In 1992, he transferred his interest in the rental property and ski chalet to the Debtor.

Mr. Lesnick handled the financial affairs of the Lesnick household. He paid the household bills and was involved in various business enterprises. Mr. Lesnick gave the Debtor money to purchase groceries and other household items.

During their marriage, the Debtor and Mr. Lesnick took two or three vacations per year. They traveled to Florida where they stayed in the condominium and to New York where they used the ski chalet. Mr. Lesnick has made certain gifts to the Debtor during their marriage including various items of jewelry. Mr. Lesnick provided the Debtor with various automobiles. In the early years of their marriage, the Debtor drove vehicles which were titled in Mr. Lesnick's name; in later years, the vehicles were owned by Lesnick Leasing, Inc. which was solely owned by Mr. Lesnick.

In 1987, Mr. Lesnick acquired a 94% interest in a company known as Erectors, Inc. (Erectors). The remaining shares of Erectors were owned by Mike Conley. The Debtor served as the corporate secretary of

Erectors. However, she has never been employed by the company and has never received any compensation from it. The Debtor has never owned any shares of Erectors.

At the time Mr. Lesnick acquired his interest, Erectors was a sub-chapter C corporation pursuant to the Internal Revenue Code. Immediately thereafter, Erectors elected sub-chapter S status which necessitated the filing of two federal income tax returns for 1987. Erectors was a cash basis taxpayer when Mr. Lesnick acquired it but was converted to an accrual basis taxpayer thereafter. Erectors reported a $548,842.00 loss on Form K–1 for 1987. Dale Jobe, a Certified Public Accountant (Jobe), prepared the tax returns and Form K–1 for Erectors in 1987.

In 1987, the Lesnicks filed a joint tax return which was also prepared by Jobe. The return reported taxable income of $215,-710.00, including a $591,596.00 loss from "Rents, Royalties, partnerships, estates and Trusts," and tax liability of $54,912.00. The "Rents, Royalties" loss included the $548,-842.00 loss reflected on Erectors' 1987 Form K–1. After the application of $640.00 of prior payments, the Lesnicks owed $54,272.00 which they paid by check.

Although she did not read or review the 1987 tax return, the Debtor signed it voluntarily and without duress. She made no inquiries of either Mr. Lesnick or Jobe as to the accuracy of the return and specifically the propriety of the loss reflected on Erectors' Form K–1. The Debtor testified that she was not prohibited from reviewing the return or from making such inquiries but rather she chose not to do so, relying on her husband and Jobe. Mr. Lesnick testified that he never directly lied to the Debtor relating to their financial affairs but he did not disclose to her the financial condition of some of his business ventures including Erectors.

In 1987, the Lesnicks sold stock in Carter Jones Lumber for approximately $1.64 million. During their marriage, Mr. Lesnick had given stock to the Debtor which accounted for approximately $80,000.00 of the total stock sold. As a result of these sales and other less significant transactions, the Lesnicks reported an $886,306.00 capital gain on their 1987 federal income tax return. The Debtor used the proceeds from the sale of her stock to purchase a golf club membership used in connection with Mr. Lesnick's condominium in Florida.

The Lesnicks carried back a 1988 net operating loss passed through to them from Erectors to their 1987 return. As a result, the Lesnicks received a refund of their previously reported 1987 tax liability plus interest.

Sometime after 1987, the IRS conducted an audit of 1987 tax returns of both Erectors and the Lesnicks. As a result of that audit, a substantial portion of the deductions which resulted in Erectors' 1987 loss was disallowed for that year. The deductions related to a consulting agreement with the previous owner of Erectors. Mr. Lesnick testified that the amount of the deduction was not disputed but rather the timing of it. On their original 1987 return, Erectors deducted $500,000.00 relating to the consulting agreement. However, the IRS later determined that that amount should have been amortized over several tax periods. As a result, the Lesnicks consented to a determination that their federal income tax liability for 1987 should have been $167,162.00. This liability was satisfied through carry backs of losses from subsequent years.

Erectors had significant financial difficulties after Mr. Lesnick acquired it. As a result of these problems, Mr. Lesnick expended significant sums of money in an attempt to keep the company in business. Despite these efforts, a receiver was appointed for Erectors in 1993 and the company was liquidated for the benefit of its creditors. The Debtor testified that she first learned of the financial trouble of Erectors when the receiver was appointed. Since that time, she has not filed a joint tax return with Mr. Lesnick.

Recently, Mr. Lesnick was convicted of federal bank fraud. He testified that from 1988 through 1993, he borrowed various amounts of money and pledged collateral which was either pledged to another bank or did not exist. At the time of the hearing before this court, Mr. Lesnick had not been

sentenced; he has subsequently been sentenced to serve 14 months in prison.

The IRS assessed a $41,791.00 penalty against the Lesnicks on July 18, 1994 which is reflected in the certified copy of the IRS transcript for the Lesnicks' joint account. The transcript also reflects that the IRS "abated" the penalty on the same date. On March 20, 1995, the IRS sent a notice to the Lesnicks that their joint account for the 1987 tax year had been changed because the "MISCELLANEOUS PENALTY THAT WAS PREVIOUSLY CHARGED HAS BEEN REDUCED" by $41,791.00. According to this notice, the balance owed by the Lesnicks relating to their 1987 tax year was $1,082.80.

On May 15, 1995, the IRS filed the amended proof of claim which is presently at issue. The total claim is $42,873.80 which includes a $41,791.00 penalty relating to the understatement of 1987 tax liability and $1,082.80 which represents interest paid by the IRS to the Lesnicks. That interest was paid on the refund the Lesnicks received relating to their 1987 tax return as a result of the carry back of the 1988 net operating loss of Erectors.

### DISCUSSION

#### A. In General

The court has jurisdiction in this matter by virtue of 28 U.S.C. § 1334(b) and General Order No. 84 entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B). This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

Counsel for the Debtor makes two separate arguments which are at issue before the court. First, he argues that as a result of the $41,791.00 abatement made by the IRS on July 18, 1994, the claim of the IRS is only $1,082.80. Second, counsel for the Debtor argues that pursuant to 26 U.S.C. § 6013(e), the Debtor qualifies as an "innocent spouse" who is relieved of liability relating to the IRS' claim.

#### B. Abatement

The Commissioner of Internal Revenue has the discretion to waive the imposition of a penalty. *Caulfield v. Commissioner*, 33 F.3d 991 (8th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1358, 131 L.Ed.2d 216 (1995). What is at issue herein is whether the IRS waived its claim for a penalty as against the Debtor.

Pursuant to 11 U.S.C. § 362(a), the IRS cannot make an assessment against a taxpayer who has filed a bankruptcy petition unless it obtains relief from the automatic stay to do so or the stay is otherwise lifted by the bankruptcy court. If the taxpayer's spouse has not also filed a bankruptcy petition, the IRS may take such action against the non-bankrupt spouse. Fred Yellon (Yellon), who has been employed by the IRS for approximately 24 years and has worked in the Special Procedures Branch of the IRS for the past 18 years, testified that to assess amounts against the non-bankrupt spouse, the IRS establishes what it terms a "non-master file" in the name of the non-bankrupt spouse only. According to Yellon's testimony, the IRS corrects any assessment made against a debtor in violation of the automatic stay of the Bankruptcy Code. Indeed, failure to reverse violations of the automatic stay may result in the imposition of sanctions pursuant to 11 U.S.C. § 362(h).

The Debtor filed her Chapter 11 petition on September 18, 1993. The assessment of the $41,791.00 penalty on July 18, 1994 in the joint IRS account of the Lesnicks represented a violation of the Bankruptcy Code's stay provision. However, as indicated in the certified copy of the IRS transcript for the Lesnicks' joint account, the IRS "abated" the assessment on the same date it was made. In addition, the copy of the IRS transcript for Mr. Lesnick's "non-master file" indicates that the IRS assessed a penalty in the same amount, $41,791.00, against Mr. Lesnick. Mr. Lesnick has not filed a bankruptcy petition, and thus, the IRS is not stayed from making an assessment against him.

Yellon also testified that in his experience, the IRS has never waived a penalty unless the taxpayer first has made a request for

such waiver. There is no evidence before the court which indicates that the Debtor requested a waiver of the penalty at issue.

Based on the above, the court finds that the evidence is consistent with the IRS having corrected its assessment made against the Debtor after she filed her bankruptcy petition and seeking to collect its claim against her through this court. The court thus concludes that IRS did not waive its claim against the Debtor for the $41,791.00 penalty.

### C. Innocent Spouse

#### 1. The Test

■ Spouses who file joint returns are jointly and severally liable for the full amount of tax due on their combined incomes. I.R.C. § 6013(d)(3) (1995). Such liability exists "regardless of the source of the income or of the fact that one spouse may be far less informed about the contents of the return than the other." *Sonnenborn v. Commissioner*, 57 T.C. 373, 381, 1971 WL 2600 (1971). One exception to this rule is the innocent spouse provision as set forth in 26 U.S.C. § 6013(e):[1]

**Spouse relieved of liability in certain cases. (1) In general.** Under regulations prescribed by the Secretary, if—

(A) a joint return has been made under this section for a taxable year

(B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse,

(C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and

(D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement,

then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement.

The alleged innocent spouse has the burden of proof with respect to each requirement of § 6013(e)(1). *Shea v. Commissioner*, 780 F.2d 561, 565 (6th Cir.1986).

The IRS concedes that the first two elements of the innocent spouse provision have been satisfied. Thus, at issue in this matter is whether the Debtor satisfies the remaining two elements.

#### 2. Knowledge

■ There is no evidence which indicates that the Debtor had actual knowledge that the 1987 return contained a substantial understatement. However, the Debtor will be unable to satisfy the third element of the innocent spouse defense if "a reasonably prudent taxpayer in her position at the time she signed the return could be expected to know that the return contained the substantial understatement." *Price v. Commissioner*, 887 F.2d 959 (9th Cir.1989). Generally relevant to the determination of a "reason to know" are the alleged innocent spouse's level of education and involvement in the family's business and financial affairs, the presence of expenditures that appear lavish or unusual when compared to the family's past levels of income, standard of living, and spending patterns, and the culpable spouse's evasiveness and deceit concerning the couple's finances. *Stevens v. Commissioner*, 872 F.2d 1499, 1505 (11th Cir.1989) (citations omitted). The alleged innocent spouse's role as homemaker and complete deference to her husband's judgment concerning the couple's finances, standing alone, are insufficient to establish that a spouse had no reason to know. *Shea v. Commissioner*, 780 F.2d 561, 566–67 (6th Cir.1986).

■ Although a spouse may not turn a blind eye toward any misconduct, the duty to inquire does not extend so far as to impose

---

1. The purpose of the innocent spouse statute was to correct unfair prior case law which held innocent spouses liable for the tax consequences of their partners' misdeeds, and "to bring government tax collection practices into accord with basic principles of equity and fairness." H.R.Rep. No. 1734, 91st Cong.2d Sess. 2 (1970).

on a spouse the duty to seek advice from her own independent legal and financial advisers as to the propriety of her spouse's investments. *Friedman v. Commissioner*, 53 F.3d 523, 531 (2nd Cir.1995) (citations omitted). A spouse can satisfy her duty of inquiry by receiving assurances that the return was prepared by a reputable accountant. *Resser v. Commissioner*, 74 F.3d 1528, 1542 (7th Cir. 1996) (citations omitted).

Counsel for the IRS has attempted to paint the Lesnicks' lifestyle as lavish by focussing on the gifts given by Mr. Lesnick to the Debtor, the fact that their home has a swimming pool and the vacations which the Lesnicks took. However, "one person's luxury may be another's necessity, and the lavishness of an expense must be measured from each family's relative level of ordinary support." *Kistner v. Commissioner*, 18 F.3d 1521, 1525 (11th Cir.1994) (citing *Sanders v. United States*, 509 F.2d 162, 168 (5th Cir. 1975)).

■ Counsel for the IRS points to the fact that the Debtor knew that Mr. Lesnick had invested in Erectors as evidence that the Debtor had reason to know of the substantial understatement. However, mere knowledge of an investment is insufficient to support a conclusion that a spouse knew or had reason to know that a deduction of a loss resulting from that investment would give rise to a substantial understatement. *Erdahl v. Commissioner*, 930 F.2d 585 (8th Cir.1991).

As further evidence that the Debtor had reason to know of the substantial understatement, counsel for the IRS directs the court to the fact that the Lesnicks reported capital gains totaling approximately $886,000.00 in 1987 yet, after the loss carry back from 1988, they had no tax liability. In particular, counsel for the IRS notes that the Debtor sold approximately $80,000.00 of stock. The court does not see the direct relation between the capital gains and the substantial understatement at issue herein. The Lesnicks' 1987 tax return would have reflected a substantial understatement of tax liability even if they had not realized the capital gains. Had the reported loss of Erectors been proper for 1987, the Lesnicks legitimately would have had no tax liability for 1987 despite the significant capital gains. Thus, knowledge of the capital gains does not provide a basis for concluding that the Debtor had or should have had reason to know of the substantial understatement. It must also be noted that it is possible to realize losses, for tax purposes, that have nothing to do with cash flow.

The Debtor has a high school education and no formal training in accounting or finance. She has a very limited role in the family finances. She relied upon her husband and the CPA they employed to prepare their tax returns. During the year at issue, 1987, and for several years thereafter, the Lesnicks' lifestyle did not change. Mr. Lesnick was trying to save Erectors by directing any available funds to the ailing company.

Mr. Lesnick testified that although he did not lie to the Debtor regarding the status of their financial affairs, he did not tell her everything. Although there was nothing to prevent her from reviewing their financial records including those of Erectors, the Debtor had no reason to do so. The Lesnicks' income available for household expenditures remained substantially the same. Mr. Lesnick gave no indication to her that any problems existed. Based on these facts, the court finds that the Debtor did not know or have reason to know of the substantial understatement of the 1987 federal income tax liability.

### 3. The Equities

■ Whether it would be inequitable to hold the Debtor liable for the 1987 tax liability must be determined "taking into account all the facts and circumstances ..." in the words of the statute. One material factor which the court must consider is whether the Debtor obtained a significant benefit from the substantial understatement. For this purpose, "normal support" is not considered a significant benefit. *Flynn v. Commissioner*, 93 T.C. 355, 367, 1989 WL 107095 (1989). However, unusual or lavish support or gifts to the spouse seeking relief are considered even when the benefit is received several years after the year in which the substantial understatement occurred. *Estate of Krock v.*

*Commissioner,* 93 T.C. 672, 679, 1989 WL 148355 (1989).

■ The Debtor did not obtain a significant benefit from the substantial understatement of the Lesnicks' 1987 tax liability. The Lesnicks' standard of living remained the same in 1987 and subsequent years. The Debtor received gifts from her husband during this time but nothing in excess of the gifts she had received throughout their marriage. Mr. Lesnick apparently used any benefit which was obtained from the substantial understatement to help fund the fledgling operations of Erectors, a company in which the Debtor had no ownership interest.

Counsel for the IRS further argues that, as a matter of policy, it is not inequitable to hold the Debtor liable for the taxes at issue. Throughout their marriage, the Debtor has obtained the benefits of that marriage by filing joint tax returns. In addition, she has signed documents releasing any claims of dower she might have relating to certain real properties owned by Mr. Lesnick in connection with Mr. Lesnick obtaining financing for his various business ventures. Counsel for the IRS thus argues that because she has obtained these benefits and exercised these rights, it would not be inequitable to hold the Debtor liable for one of the resulting costs of that marriage—joint and several tax liability for taxes relating to joint income tax returns.

Obtaining the normal, incidental benefits of marriage cannot itself be the basis for denying innocent spouse relief. If it could, very few, if any, spouses would so qualify. In particular, that a spouse obtained the benefits of filing joint income tax returns cannot itself be the basis for denying innocent spouse relief because relieving a spouse from joint and several liability resulting from a joint income tax return is the basis for the innocent spouse exception. In conducting its analysis, the court must determine that notwithstanding the incidental benefits of marriage, it would be inequitable to hold the spouse liable for the taxes at issue. The existence of any incidental benefits of marriage is but one of many facts and circumstances the court must consider in its analysis. The relationship between the incidental benefits and the substantial understatement at issue must also be considered.

That the Lesnicks are still married, counsel for the IRS argues, weighs strongly against granting the Debtor relief as an innocent spouse. The court agrees that this fact must be considered in its analysis but disagrees that it should be determinative. There is no indication that Congress intended the status of joint taxpayers' marriage to be anything other than part of the totality of circumstances which the court must consider. Had it intended a separation or divorce to be a condition precedent for innocent spouse status, Congress presumably would have so indicated explicitly in the statute. The court also notes that although the Lesnicks are not divorced or separated, Mr. Lesnick will serve 14 months in prison during which time, the Debtor will be primarily responsible for satisfying the IRS' claim unless she is granted relief as an innocent spouse.

The Debtor was not involved with the activity that resulted in the substantial understatement and received no benefit thereby. She was not a shareholder or an employee of Erectors, the entity whose operations generated the deduction which was disallowed for 1987. The evidence establishes that she did not know and had no reason to know of the substantial understatement. Upon learning of Mr. Lesnick's financial problems, the Debtor ceased filing joint income tax returns with him.

Based on the above, the court finds that it would be inequitable to hold the Debtor liable for the tax liability which resulted from the substantial understatement attributable to the grossly erroneous item of her spouse, Mr. Lesnick. The court further finds that the Debtor satisfies the requirements of the innocent spouse provision of the Internal Revenue Code and thus should not be liable for the amounts claimed by the IRS. Accordingly, the Debtor's objection to the IRS' claim will be sustained. An order in accordance with the foregoing shall issue forthwith.